■ LINDA MORGANO, Appellant, v EDWARD MORGANO, Respondent.—In a matrimonial action, the plaintiff wife appeals from an order of the Supreme Court, Kings County (Imperato, J.), dated April 27, 1984, which, *inter alia,* granted the defendant husband's motion to transfer custody of the parties' child from the plaintiff wife to him.

Order affirmed, with costs.

The parties were married in Kings County on August 18, 1968, and had one child, Matthew, born May 11, 1973. In May 1978 the plaintiff moved from the marital residence, leaving Matthew with the defendant. A divorce was granted on August 2, 1978, with the issue of custody severed for trial. By order entered February 15, 1979, sole custody of Matthew was awarded to the plaintiff with liberal visitation rights to the defendant. Since the child was to be staying with the father some time during the week and for an extensive period of time on weekends, he was ordered to pay only $45 per week child support.

The instant application for a change of custody was brought by the defendant when the plaintiff moved from Brooklyn to California with Matthew without informing the defendant of her intention prior thereto.

On Wednesday, November 16, 1983, the plaintiff called the defendant's present wife and informed her that Matthew would not be able to visit as he was not feeling well. When Matthew did not show up for his scheduled weekend visit, the defendant called the plaintiff's telephone number and was referred by a recorded message to the plaintiff's mother's telephone number. Upon investigating, the defendant discovered that the plaintiff had moved from her apartment on that Wednesday, leaving her parents' address as the only forwarding address. The plaintiff's family refused to provide information as to her location or how he could contact Matthew. On November 19, 1983, the plaintiff called the defendant and told him that she and Matthew were in California, but she refused to give their address or telephone number or to let the defendant speak with Matthew. The defendant obtained a court order directing the plaintiff's mother and aunt to supply Matthew's address and telephone number, which they did. Meanwhile the plaintiff commenced an action in the Superior Court of California to modify the defendant's visitation rights and cross-moved to dismiss the defendant's motion for a change of custody. Eventually, New York retained jurisdiction and the plaintiff withdrew the California action.

After a hearing was conducted, Special Term, in the order appealed from, transferred sole custody of Matthew to the defendant with liberal visitation to the plaintiff at her own expense. The plaintiff was directed to return the child to the defendant during the July 7, 1984 weekend. It was further provided that, in the event the plaintiff returned to this jurisdiction and established a permanent domicile in the New York metropolitan area prior to that July 7, 1984 date, she could apply to the court for custody of Matthew and a reversion to the terms and conditions of the original custody and visitation order.

As was recently reiterated by this court in *Kozak v Kozak* (111 AD2d 842, 843, *appeal dismissed* 66 NY2d 913): "We have repeatedly stated the applicable legal principles in cases such as this to be as follows: 'It is the general policy of this State that a move by the custodial parent to a distant domicile will not be permitted when it would effectively deprive the noncustodial parent of regular access to the child of the marriage (see *Weiss v Weiss,* 52 NY2d 170; *Munford v Shaw,* 84 AD2d

810; *Daghir v Daghir,* 82 AD2d 191, affd 56 NY2d 938; *Strahl v Strahl,* 66 AD2d 571, affd 49 NY2d 1036). The primary concern is the child's best interests which is generally found to be furthered by "his being nurtured and guided by both of his natural parents" *(Daghir v Daghir, supra,* p 193; see *Weiss v Weiss, supra,* p 175). Nevertheless, resolution of such disputes entails a careful balancing of both the rights and problems of the child and his parents (see *Weiss v Weiss, supra,* pp 176-177; *Daghir v Daghir, supra,* p 195). The courts approach matters of this nature on a case-by-case basis and have, on occasion, permitted a move to a distant domicile (see *Martinez v Konczewski,* 85 AD2d 717, affd 57 NY2d 809; *Cmaylo v Cmaylo,* 76 AD2d 898 *[appeal dismissed* 51 NY2d 770]). It has also been stated that upon a showing of exceptional circumstances, a parent may be deprived of his right to reasonable access to the child. Such exceptional circumstances are "invariably associated with a situation where either the exercise of such right is inimical to the welfare of the children or the parent has in some manner forfeited his or her right to such access *(Matter of Denberg v Denberg,* 34 Misc 2d 980, 986)" *(Strahl v Strahl, supra,* p 574; see *Weiss v Weiss, supra,* p 175; *Daghir v Daghir, supra,* p 194)' *(Schwartz v Schwartz,* 91 AD2d 628, 629)."

We note that the hearing court's determination is generally accorded the greatest respect and will not be disturbed in the absence of an abuse of discretion *(see, Cataldi v Shaw,* 101 AD2d 823). The evidence herein amply demonstrated that the child had strong family ties to both his mother's and his father's families in Brooklyn and that his grandparents, as well as virtually all of his extended family, reside there or in the New York City area. Matthew had spent his school years in the same neighborhood, had neighborhood friends, and was a good student. It would, therefore, appear that, absent a showing of exceptional circumstances, it was in Matthew's best interest to remain in Brooklyn where he could continue residing in the same neighborhood, go to the same school, and have the benefit of his strong family ties, including extremely warm, loving and frequent contact with his father. When one considers the fact that the defendant was granted visitation on at least every Wednesday afternoon from 3:00 to 7:30 P.M. and from after school on Friday until Sunday evening (or Monday morning if the defendant brought Matthew to school), and took full advantage of such rights, it is obvious that the plaintiff's actions significantly tampered with the defendant's visitation rights and his relationship with his son.

In cases where the custodial parent has unilaterally moved to a distant jurisdiction, which caused interference with the noncustodial parent's rights to visitation, the courts have changed custody (see, *Daghir v Daghir*, 56 NY2d 938; *Entwistle v Entwistle*, 61 AD2d 380, *appeal dismissed* 44 NY2d 851; *Matter of Yeo v Cornaire*, 91 AD2d 1153, *affd* 59 NY2d 875; *Courten v Courten*, 92 AD2d 579) absent a compelling showing of exceptional circumstances or a pressing concern for the welfare of the custodial parent and child.

Here it appears that the sole basis for the plaintiff's move to California was to take advantage of a job opportunity which would substantially increase her salary and fringe benefits while permitting her to work from her home. While it is undoubtedly true that the plaintiff's economic situation was greatly improved by her move, there is no evidence of economic necessity (i.e., that she was or would be unable to live on the salary she had been earning in New York). While economic betterment is a factor which should be considered, it must be balanced against the best interests of the child and the rights of the noncustodial parent.

As we find that the plaintiff has not demonstrated sufficient exceptional circumstances to warrant the disruption of the child's relationship with his father or the curtailment of the father's rights, the order is affirmed. Lazer, J. P., Gibbons, Niehoff and Kunzeman, JJ., concur.