OPINION OF THE COURT
George D. Marlow, J.
This custody dispute presents two questions which to date have received little judicial attention. The first involves the appropriateness of an in camera interview with children outside of the confines of a courthouse. The second issue is whether, in a custody case, the legal position of a repeatedly and severely abused spouse should be considered weakened as a result of her abrupt, out-of-State move with the children. Although the answer may seem self-evident, this precise issue has not been judicially treated in any extensive manner. And, while the within custody award in favor of respondent mother could be based exclusively upon a consideration of the usual "current best interests” test (Friederwitzer v Friederwitzer, 55 NY2d 89), the instant facts present this court with an occasion to deal also with one of the many issues raised by the entire subject of domestic violence. Indeed, the court could limit its focus solely to the conventional comparison of the two available environments, but there is another pressing concern that merits discussion, namely, whether the phrases "exceptional circumstances” and "pressing concerns” can encompass severe and long-standing abuse as an arguable basis for a long-distance relocation. (Morgano v Morgano, 119 AD2d 734.)
This opinion follows a four-day custody trial initiated by a petition filed by William Desmond, age 31, the father of two children: Diane, born June 8, 1973, and William Arthur, born August 1, 1979. Respondent mother, Jane Desmond, age 30, married petitioner in Bronx County on June 16, 1976.
The evidence consisted of the testimony of both parents, the paternal grandmother, petitioner’s sister-in-law to be, petitioner’s friend, and various records and documents. In addition, the court conducted an in camera interview with the children pursuant to Matter of Lincoln v Lincoln (24 NY2d 270). The court, as it has in the past, decided sua sponte to conduct the interview with the children, in the presence of a court reporter, outside of the courtroom in a local park. Such a procedure has been sometimes employed by this court based upon the belief that virtually all children, who are unfortunate enough to be embroiled in a custody contest between their two beloved but warring parents, are necessar *64 ily in some form of emotional distress.[2] Therefore, it goes without saying that a Judge ought to approach these youngsters with less than the usual formality and in a calm, peaceful, and nonintimidating environment like a sparsely populated park or a child’s own home. Such surroundings can lessen anxiety, encourage children to be more at ease and perhaps more open, and smooth some of the piercing edge of a memory that is likely to be sad and hurtful. If it accomplishes nothing else, this method can provide children with a remembrance of a court which tried hard to focus quietly and intensely upon their individual needs and wishes.
The parties had their older child out of wedlock when both were teen-agers. They were married about three years later. Their marriage was, to say the least, stormy and often unhappy. It was accompanied by outbursts of rage by both of them; repeated acts of physical, sexual and emotional abuse by petitioner against respondent (some of which he partially admitted); drug use by the mother which ended several years ago; very frequent (at times daily) drug use by the father, which by his own admission continued at least until the start of this trial, and much of it while the children were in or near the household; a nine-month separation from 1977 to 1978 during which petitioner fathered a child by another woman; a flagrant disregard by petitioner of his parental duty to provide financial support for his children;[3] an hysterical, secret escape by respondent from Dutchess County to Hampton, Virginia, with the children; an occasional and inappropriate use of corporal punishment inflicted upon the children by petitioner, and to a lesser, but also inappropriate, extent by respondent; an outrageous, destructive and illegal future offer of unlawful drugs by petitioner to his daughter which offer he vainly attempts to justify with reasoning too irrational and absurd to be worth describing herein; and a degree of mutual anger shared by these parents which, in varying degrees, has completely undermined their ability to deal civilly with each other in a manner likely to promote their children’s best interests.
The court, as an example of the mother’s inappropriate conduct toward the father, notes that after she fled the State *65 with the children she secreted them from their father for almost two months. While her reasons for leaving her husband are clear and more than understandable, there was no justification for her depriving the children of any contact with their father for such a long period of time.
On the other hand, the court was most disturbed by, inter alia, petitioner’s description of two conversations he had with his son and daughter. In one he admitted drug use to them, failed to discourage them from engaging in such conduct, and, indeed, importuned them to keep his continuing illegal conduct secret. In another he deliberately berated his daughter because she made positive statements to him about her life with her mother. Moreover, during his testimony, he displayed no remorse for his insensitivity toward his daughter’s feelings. Finally, the court finds that petitioner has so severely abused his wife physically, emotionally,[4] and sexually that there is little hope that their relationship can, for the foreseeable future, be an umbrella of security necessary for these children’s emotional peace.
This court’s findings of wrongdoing by petitioner are not intended to ignore some of respondent’s parental misconduct. While she quite likely can offer some explanation or justification for her actions, they nonetheless did not promote the needed harmony with petitioner. For example, since August 1985, she has not sufficiently communicated with the father concerning the children’s performance in school, their activities, and their health care. She failed to react appropriately against petitioner’s illegal drug use in the marital home. Finally, there is insufficient evidence that respondent has actively encouraged the children to call, write or visit their father since she left with them in August 1985.
Petitioner urges that he is entitled to custody because respondent ran away with the children and hid them in Virginia for several weeks. While that behavior cannot be condoned — notwithstanding the reasons given — this court cannot ignore or be insensitive to the circumstances preceding respondent’s desperate act. Considering the limited options available to respondent in her emotional, physical and financial circumstances in August 1985, this court would deem it unconscionable to award petitioner custody based on this one episode.
*66 While in many cases a sudden, long-distance move might precipitate an award of custody to the parent left behind, the instant situation does not justify such a harsh result. This is so not only because this respondent is clearly the more capable custodian, but also because the court finds that there exist exceptional circumstances which completely militate against any ruling which would penalize this mother in any way for her clandestine and abrupt relocation. Such exceptional circumstances include this court’s conclusion that respondent was completely justified in escaping from the marital home, with the children, to protect their respective safety and best interests; that respondent had more than reasonable cause to be frightened by any prospect of her taking up residence locally after the proven history of petitioner’s abuse; that petitioner’s abusive acts substantially worsened the strife to which the children — to their detriment — were repeatedly exposed; and that her selection of Hampton, Virginia, as a new home for her and the children makes sense because it is the only site which provided her with a strong, familial support network to assist her in creating a new and tranquil environment for her children and herself. (Klein v Klein, 93 AD2d 807, 808.) For all of these reasons, this court will not allow the mother’s position in this custody case to be adversely affected by her abrupt, out-of-State move. This holding is consistent with the settled law of this State which requires a trial court to render custody rulings in accordance with a child’s current best interests. (Eschbach v Eschbach, 56 NY2d 167; Friederwitzer v Friederwitzer, 55 NY2d 89, supra.)
While this holding must be construed in light of the particular facts herein, it is also intended to signal the acceptance by this court of the view that severely and/or repeatedly abused parents ought not to be penalized, in the context of a custody-visitation case, for seeking refuge out of the easy reach of their oppressors. On the other hand, this decision must, under no circumstances, be construed as giving a general license to parents to flee the jurisdiction with their children simply because there is some history of marital abuse. Thus, in order for such an escape to be precluded from reflecting adversely on the position of the parent who leaves the area, the level and quantum of abuse must be carefully considered together with all of the other relevant circumstances which surround the family. Such factors may, inter alia, include the availability of family services locally, the nearby residence of close family members of the abused parent, the severity of the *67 abuse and the length of time it has been ongoing, the age of the children and the quality of their relationship with each parent, the presence of the children during episodes of spousal abuse and their knowledge of such misconduct, the commission of abusive acts toward any of the children, the utterance of any credible threats by the abusive spouse, the economic position of each parent, and any other factors which would significantly bear upon the children’s welfare.
Indeed, the law is clear that an out-of-State change of residence, if occasioned by exceptional circumstances, may be abided even though there follows a disruption of visitation with the remaining parent. (Kozak v Kozak, 111 AD2d 842, 843, appeal dismissed 66 NY2d 913.) And, "where relocation is necessitated by legitimate health, financial, educational or employment considerations it has been tolerated (see, Klein v Klein, 93 AD2d 807; Schwartz v Schwartz, 91 AD2d 628; Martinez v Konczewski, 85 AD2d 717, affd 57 NY2d 809).” (Matter of Jones v Jones, 105 AD2d 535, affd 65 NY2d 649; see also, Weiss v Weiss, 52 NY2d 170, 175; Strahl v Strahl, 66 AD2d 571, 574, affd 49 NY2d 1036.)
In addition, it has also been stated that such a move shall not be thwarted at the behest of the remaining parent who by deed has " 'in some manner forfeited his or her right to such access [i.e., visitation or custody] (Matter of Denberg v Denberg, 34 Misc 2d 980, 986)’ (Strahl v Strahl, supra, p 574; see Weiss v Weiss, supra, p 175; Daghir v Daghir [82 AD2d 191, affd 56 NY2d 938] p 194)” (Schwartz v Schwartz, 91 AD2d 628, 629). It can hardly be convincingly argued that repeated acts of physical terror and forced sex over a number of years, commingled with emotional abuse (much of which was seen or heard by the children) are to be disregarded when contemplating the degree and quality of petitioner’s future access to his children.[5] (Katz v Katz, 97 AD2d 398; Serrano v Serrano, NYLJ, Jan. 21, 1986, p 17, col 6 [Sup Ct, Kings County].)
Petitioner further urges that respondent is lying about and exaggerating the extent of his abusive conduct. This court flatly disagrees and finds her testimony to be essentially truthful and most credible. It comes as no surprise that a woman — abused so much, for so long, and in so many ways— would effectively hide her miserable plight from friends and *68 family alike. It calls for little compassion indeed to understand, and to sympathize with respondent’s assertion that, out of embarrassment, she told no one of her pain until this case began and progressed. That a woman would feel demeaned and that she would steadfastly conceal the humiliation of forced sex, repeated acts of assault and battery upon her face, back and buttocks with her husband’s fists and feet are understandable realities rather than created tales.
Additionally, the court found credible (and unsettling in the context of a custody case) respondent’s testimony wherein she described how in the summer of 1985 (and earlier), during an argument, she was required by petitioner to remain silent upon his command to her, "red flag”. That utterance was understood by her to be his stated order to her to refrain from speaking to him any further. On this occasion, as others, it was followed by a most intense assault. Indeed, injuries from such episodes were proven by hospital records of July 27, 1985 and February 1, 1978.
Finally, that petitioner’s mother, sister-in-law to be and best friend testified — quite credibly — in support of his contention that his wife never appeared abused and never really complained to them does not persuade this court that Jane Desmond was lying about petitioner’s violence. The court believes respondent’s testimony that her sustained silence over many years was borne not only of her humiliation, but of her naivé belief that the violence would end by itself.
Although this court finds petitioner’s conduct completely unacceptable as it relates to his quest for custody, this court still believes that, through it all, he genuinely loves, cares for, and wishes to have meaningful contact with his children. His problem has much more relevance to his inability to deal with issues requiring self-control, vis-á-vis his wife and others who evoke his anger, than an incapacity to effectively care for his children and fulfill many of their needs.
Therefore, the court directs that both parents undergo psychological counseling separately; that they provide for such services for their children by a licensed mental health professional; and that each cooperate by attending sessions as requested by the other’s counselor. The court does not hereby restrict the parties to any particular number of professionals. They may use one, two or three at their discretion, but the counselor for the children shall be a mental health professional licensed or certified by the State of Virginia. The cost of *69 the parents’ counseling shall be their respective responsibility, and the costs for the children’s sessions shall be paid by the father to the extent of 75% of any amounts not covered by his health insurance. The mother shall be responsible for the balance.
While the court awards custody to respondent mother, she and the children have agreed to a visitation award. Therefore, visitation shall occur as outlined in a separate court order issued simultaneously herewith.

. Waller stein and Kelly, Surviving the Breakup (1980).

. The court notes that petitioner claimed at one point an inability to provide support (apart from his admitted refusal) and at another point confessed to using part of his salary to pay for his purchases of illegal drugs.

. In some instances the physical and emotional abuse was recklessly carried out in the presence or with the knowledge of the children.

. For an excellent discussion of the effects of abuse on issues of custody and visitation, see, Cohen, McCabe and Weiss, Child Abuse and Neglect, ch V (by Hon. Marjory Fields) (1986).