■ GENEVIEVE A. RYBICKI, Also Known as GENEVIEVE AVINO-GLUEGE, Appellant, v CONRAD J. RYBICKI, Respondent.—In a matrimonial action in which the parties were divorced by a judgment dated January 9, 1984, the plaintiff wife appeals (1), as limited by her brief, from so much of an order of the Supreme Court, Suffolk County (Kitson, J.), dated July 13, 1990, as denied her cross motion to relocate the parties' three children from Northport, New York, to Fairfield County, Connecticut, (2) from an order of the same court dated July 31, 1990, which, *inter alia,* denied her application to "So-Order *nunc pro tunc"* a stipulation of settlement entered into by the parties on November 24, 1986, and (3) from, so much of an order of the same court (Friedenberg, J.), dated October 26, 1990, as upon granting reargument, adhered to the determination made in the order dated July 31, 1990.

Ordered that the order dated July 13, 1990, is modified by deleting the provision thereof (at page 12) conditioning the continuance of child custody with the mother upon her contin-

ued residence in the Northport area, without prejudice to the defendant husband making application for a change of custody to him in the event the wife relocates with the children in violation of the terms of the parties' stipulation of settlement, dated September 30, 1983; as so modified, the order is affirmed insofar as appealed from; and it is further,

Ordered that the appeal from the order dated July 31, 1990, is dismissed as that order was superseded by the order dated October 26, 1990, made upon reargument; and it is further,

Ordered that the order dated October 26, 1990, is affirmed insofar as appealed from; and it is further,

Ordered that the respondent is awarded one bill of costs.

The husband and wife in this matrimonial action were separated in about October 1981 and were subsequently divorced pursuant to the terms of a stipulation of settlement entered into on September 30, 1983, which was incorporated, but did not merge, into the judgment of divorce dated January 9, 1984. The stipulation provides in pertinent part that the wife maintain a principal residence for herself and the three children of the marriage in the Town of Huntington or the Fort Salonga area of the Town of Smithtown, New York, until the youngest of the children attains the age of 18 or is graduated from high school. This provision was further conditioned upon the husband maintaining his principal residence in the Town of Huntington or upon his written consent to the wife's relocation. The parties also agreed pursuant to the stipulation that if the wife were to remove the children from the designated area without the consent of the husband or the court, the husband would then be presumed to have the right to obtain custody of the children. The parties were divorced by judgment dated January 9, 1984, and thereafter each continued to reside in the vicinity of Northport, Long Island, the wife retaining custody of the three young children (although the youngest child, James, temporarily resided with his father during 1990).

Following the parties' separation but before their divorce, the wife entered into a relationship with a German national, who later became her second husband in July 1989. Several months after the marriage, the second husband was notified that the firm for which he worked on Long Island was being closed and he was given the option of being transferred either to a facility maintained by his employer in Boston, or to the main branch in Germany, or receiving severance pay. After discussing his employment options with his wife, the second

husband decided to explore employment possibilities on Long Island so as to render relocation unnecessary. However, as he searched for positions in that area, it became apparent that as a foreign national he was at a considerable handicap since most of the positions in his field of expertise were related to the defense industry and thus required employees to hold American citizenship.

After expanding the geographical scope of his search to include, among other areas, Connecticut, the second husband accepted a job offer from a firm located in Danbury, Connecticut. Subsequently, he and his wife began looking for housing in the area of Fairfield County, Connecticut, an area approximately 84 miles distant from the childrens' present residence, with the intention of relocating there with the parties' three children.

Upon learning of the intention of his former wife to relocate, the husband moved to enjoin her and the second husband, *inter alia,* from removing the three children from the Northport, New York area. The wife cross-moved for an order granting her permission to relocate to Fairfield County, Connecticut with the children. The husband subsequently moved for a change of custody of the three children to him.

After hearing extensive testimony, and twice interviewing the children, and after reviewing the report of the independent court-appointed psychiatrist, the court concluded that it was not in the childrens' best interests to relocate and therefore denied the wife's application to do so. The court also determined that the youngest child, James, should remain with his father pursuant to his wishes, pending a course of counseling to be determined by the court-appointed psychologist. The two older children expressed a clear preference to remain with their mother. (James, too, has since returned to his mother's home.) The court thus denied the husband's application for a change of custody to him, but conditioned its determination that custody continue with the mother upon her continued residence in Northport and further directed that "residential custody" would be transferred to the husband in the event that the mother should relocate in violation of its order. This appeal ensued.

It is well settled that a custodial parent may not as a matter of right remove the children to a distant geographical location so as to render the exercise of the right of visitation by the noncustodial parent impracticable. While it is sometimes essential for the custodial parent to relocate for economic or personal reasons *(see, e.g., Hemphill v Hemphill,* 169

AD2d 29), the law requires that the interests which might justify such a relocation by the custodial parent be balanced against the noncustodial parent's fundamental human right to frequent visitation and, most significantly, by the best interests of the children *(Kozak v Kozak,* 111 AD2d 842, 843; *see, Hemphill v Hemphill, supra).* We conclude that the Supreme Court did not improvidently exercise its discretion when, in balancing these interests, it denied the wife's application to relocate.

At the outset, it is important to note that the testimony adduced at trial revealed the former husband to be exceptionally involved in the day to day parenting of his children. In essence, he had structured his life so as to participate actively in the children's interests and activities at considerable personal, professional, and financial sacrifice to himself. Since the parties separated nearly a decade ago, he has seen his children on an almost daily basis and has provided them with love and guidance. The proposed relocation would necessarily reduce the frequency of his interaction with the children.

Furthermore, in contrast to those cases where this court has permitted a custodial parent to relocate *(see, Hemphill v Hemphill, supra; Blundell v Blundell,* 150 AD2d 321; *Zaleski v Zaleski,* 128 AD2d 865), the area to which relocation is sought in this case, approximately 84 miles away, is not so far from the wife's current residence as to preclude the second husband from continuing to reside there and commuting to work. While such a lengthy commute might increase stresses upon the household of the wife and her second husband, we agree with the determination of the Supreme Court that on balance, such stresses are outweighed by the more compelling interests of the children in continued frequent parenting time with their father and maintaining the stability of their environment *(see, Eschbach v Eschbach,* 56 NY2d 167; Domestic Relations Law § 70). Indeed, not only would a relocation uproot the children from the only residence and community they have ever known, but additionally, according to the wife's proposed visitation schedule, the children themselves would be turned into commuters.

We note several other distinctions between the facts in this case and those in *Hemphill v Hemphill (supra),* recently decided by this court, where we affirmed the trial court's approval of the mother's relocation to England with the parties' two children. Mrs. Hemphill's second husband had a well-established business in London from which he could not reasonably be expected to commute to New York. Here, the

second husband had only recently obtained new employment in Connecticut and would, when eligible to apply for United States citizenship in 1992, have enhanced opportunities for obtaining a position in his area of specialization in Long Island where the children reside. Moreover, as noted above, his commute to Connecticut from Long Island, while tedious, would not be impossible. In this case, the independent psychiatrist recommended against the childrens' relocation, whereas in *Hemphill,* the independent psychiatrist recommended in favor of the relocation of the children. Furthermore, the terms of the *Hemphill* custody agreement did not include a radius clause precluding the wife's relocation, but in this case the parties did include a specific provision preventing the wife's removal of the children from the parties' area of residence without the husband's consent or court approval. Additionally, Mr. Rybicki's parenting role is a far more active and intense one than was Mr. Hemphill's.

The case at bar is therefore not only distinguishable from *Hemphill,* but the very factors that distinguish it persuade us that the trial court did not improvidently exercise its discretion in denying the mother's application for relocation of the children.

The one matter with which we disagree with the trial court's disposition of this case, concerns its ruling that the childrens' continued residence with their mother is "conditioned upon her continued residency with the children in Northport, New York" failing which custody "shall be" awarded to the father. This determination, while possibly never taking effect, impermissibly purports to alter the parties' custodial arrangement automatically upon the happening of a specified future event without taking into account the childrens' best interests. Indeed, pursuant to this order the wife would lose custody to the husband automatically, without consideration of surrounding circumstances, even those presently not contemplated, should she relocate. While the court absolutely has the right to ensure compliance with its directives and could, for example, hold the wife in contempt or otherwise sanction her for her disobedience, it is not proper to determine, in advance, that she will be stripped of child custody for her non-compliance with a court order as this disposition wholly fails to consider the single most important consideration, namely, the best interests of the children. Accordingly, to this limited extent the order dated July 13, 1990, is modified.

We have reviewed the wife's remaining contentions and find

them to be without merit. Eiber, J. P., Rosenblatt, Miller and Ritter, JJ., concur.