# F. ELKUS, Respondent, v PETER ELKUS, Appellant.

First Department, August 27, 1992

### APPEARANCES OF COUNSEL

*Alfred Ferrer III* of counsel *(Diane C. McEnroe* with him on the brief; *Piper & Marbury,* attorneys), for appellant.

*Robert M. Rosen* of counsel *(Rosen & Leff,* attorneys), for respondent.

### OPINION OF THE COURT

Sullivan, J.

This appeal is from an order which permits the mother, their primary caretaker, to relocate the two children of the marriage, ages 14 and 12, from their present home on Long Island, easily accessible to the father, who faithfully exercises his visitation rights, to California so that the mother can spend more time with her new husband, who resides there and cannot relocate.

The parties, after a 17-year marriage, were divorced by judgment, entered on September 18, 1990 pursuant to a stipulation of settlement, which provided for joint custody of their two daughters. Within three months, the mother, an interna-

tionally renowned opera and concert singer, whose annual gross earnings approximate $800,000, remarried and, shortly afterward, moved to relocate the children to Alameda, California, in the San Francisco Bay area, where her new husband resides with his 17-year-old daughter from a prior marriage. The father, who earns approximately $90,000 yearly and has inherited wealth, opposed the application on the ground that he and the two children had a close relationship which would be jeopardized by a move to California; over the previous year and one half, he visited them in the rented Long Island former marital home every other weekend and twice during the week.

After a hearing, review of the guardian's report and an in camera interview with the children, who, with the father and the guardian ad litem, opposed the proposed relocation, the court denied the application, finding that relocation was against the children's best interests. The court noted that the children opposed relocation for many reasons, that the mother's scheduled operatic engagements for the next year required extended absences from California and that, since the mother had no plans to hire a housekeeper, her new husband would be the children's primary caretaker. The court, however, indicated its willingness to grant permission for such a move at the end of the school year, in June 1992—when the older child would have graduated from junior high school—on a showing that the children had been properly prepared for the move. This court affirmed. (Elkus v Elkus, 180 AD2d 444.)

The mother subsequently took steps to ameliorate the court's concerns. At significant financial sacrifice, she rearranged her professional schedule to minimize her absences from California, and she took the children to a therapist to prepare them for the move. In addition, the mother offered to assume financial responsibility for visitation-related expenses, including airfare, telephone calls and a rental apartment for the father in the Bay area, found suitable educational facilities for the children in California and hired a housekeeper to care for them during her absences.

Despite these efforts, the children continued to oppose relocation. A second guardian ad litem, appointed after a charge of bias was asserted by the mother against the original guardian on the second application to relocate the children, independently opposed relocation, citing the danger of jeopardizing the children's close relationship with the father, the importance to the children of their friends, teachers and social

relationships, the mother's frequent absences due to her career commitments and the possibility of friction between the children and the new husband's 17-year-old daughter.

A court-appointed child psychiatrist, who conducted extensive interviews with the children, the parents, the new husband and the guardian concluded that their best interests would be served by their remaining on Long Island. He expressed the view that relocating the children in California would lead to "the disruption of their lives, the loss of the stabilizing aspects of their friends and school, and the loss of their regular and frequent contact with their father." In reaching his determination, the psychiatrist found that the parents' divorce led to a greater need for the children to seek stability elsewhere, in this case with friends and school, and that during the mother's absences it was the father who had been present and available to them.

■ Despite the opposition of the children, father, guardian and court-appointed child psychiatrist, the court, after a hearing, granted the motion to relocate, finding that the children and their stepsister had spent more time together since the prior application and that the schools chosen for the children in California would be academically superior to the one presently attended on Long Island. The court took note of the mother's agreement to cancel some of her European appearances, and her hiring of a housekeeper. Under such circumstances, the court held, there was "no compelling reason for [the children] to remain here." Since, in our view, the court applied an improper standard and the requisite standard of exceptional circumstance justifying relocation has not been met, we reverse.

The predominant concern where child custody is at issue is "the ultimate best interest of the child". (*Matter of Nehra v Uhlar,* 43 NY2d 242, 248.) Since, "[w]henever possible, the best interests of a child lie in being nurtured by both natural parents" (*Hemphill v Hemphill,* 169 AD2d 29, 32, *appeal dismissed* 78 NY2d 1070), a custodial parent may not remove a child of the marriage outside the locale where the noncustodial parent resides unless the custodial parent proves that there are exceptional circumstances or pressing concerns for the welfare of the custodial parent or the child which warrant relocation. (*Wiles v Wiles,* 171 AD2d 398, 399-400; *Daghir v Daghir,* 82 AD2d 191, *affd* 56 NY2d 938.)

While "the obligations of a new marriage may legitimately,

if rarely, require even 'a dramatic change of locale' " *(Daghir v Daghir, supra,* 82 AD2d, at 194), the mere fact of remarriage, without more, will not constitute an exceptional circumstance. *(Lo Bianco v Lo Bianco,* 131 AD2d 642; *see also, Richardson v Howard,* 135 AD2d 1140.)

That the mother's new husband resides in California and cannot relocate and that the move will be advantageous to her career are insufficient, in the absence of a showing of economic necessity or other exceptional circumstances to justify relocation of the children. In granting the mother's motion to relocate, the hearing court relied on *Hemphill v Hemphill* (169 AD2d 29, *supra),* in which a divided court granted an application for relocation. While the *Hemphill* decision signifies a somewhat generous view of the custodial parent's right to relocate, the court did not purport to establish any new standard for determinations of this kind. Rather, the result turned on a question of economic necessity, the relocating parent being economically dependent on the new spouse with no alternative but to move, and the fact that the children were no strangers to long-distance visitation. Those circumstances are not present here. While relocation to California may be advantageous to the mother's career, she specifically represented at the second hearing that if relocation were denied she would remain in the New York area as the children's primary custodian.

Furthermore, the mother's frequent absences necessitated by her professional engagements are an important consideration in any best interests assessment, underscoring the significance of the children's relationship with their father and the stabilizing influence of their friends, school and surroundings.

We note also the hearing court's failure to address the reasons advanced by the guardians and court-appointed psychiatrist for opposing relocation, all of which revolved around the general rule that disfavors distant geographic relocations tending to frustrate the objective of regular contact with both parents. For example, both guardians and the expert, as well as the children, expressed the view that the new husband was not an adequate substitute for the proximity of and frequent contact with the father, especially during the mother's absences. Neither the availability of a housekeeper in California nor the mother's offer to defray the expenses of the father's visitation adequately addresses that concern. The quality of the father's visitation can only suffer when frequency and flexibility are diminished.

Instead of addressing this and other concerns, the court relied upon factual findings which are insufficient to uphold its determination and, in some instances, do not find record support. For instance, the court's statement that "there is no real disagreement that the schools chosen for the children in California" are academically superior to the children's school in Long Island is unsupported by any proof other than the self-serving testimony of the mother, who did not attend any classes at the California school under consideration. In fact, the older child, who "excels in math" and who did visit the California school, was under the impression that "no accommodation would be made there for her advanced math level." The court also found that both children get along "much better" with their stepsister since the initial determination. While the older child did tell the guardian that "she likes the stepsister more after spending a day with her at [her] high school" during a trip to Alameda, she was "still opposed to moving to California."

The court's findings that the father has not "created any kind of home life for the children" and has "made no attempt" to move from his studio apartment in Manhattan to an apartment to accommodate the children either in Manhattan or Long Island failed to take into account the father's motions for primary custody at both relocation hearings and his deliberate efforts to fit himself into the children's lives rather than make theirs part of his. He has visited the children at least two evenings during the week and spent the greater part of alternate weekends with them. When the mother has had to travel, he has visited with the children almost every night.

Relocation to California would not only limit the frequency of visitation, but would have an adverse effect on the nature and quality of the father's relationship with the children. While the father's visitation in New York has harmoniously blended with the children's lives and activities, visitation in California, 3,000 miles away, would necessarily be sporadic; moreover, it would be taking place in an alien environment that would take the children out of their daily routine. Rather than supportive, the visits would be disruptive. In such circumstances, the mother has failed to demonstrate a compelling reason or exceptional circumstances to justify relocation to California.

■ Finally, although we affirmed the denial of the mother's original application to relocate for the reasons stated by the

IAS Court, which, in denying the motion, held that "unless circumstances change substantially, the children should be permitted to move to California after [the 1991-1992] school year", our consideration of the issue whether relocation is now warranted is not foreclosed, since the determination of this issue was not necessary to the prior order denying relocation and was not decided on the prior appeal.

Accordingly, the order of the Supreme Court, New York County (Walter M. Schackman, J.), entered May 18, 1992, which, *inter alia,* modified the decision of the court, dated April 30, 1992, to provide that the decision constitute the order of the court and directed the parties to settle a subsequent order regarding visitation, and the order of the same court and Justice, dated April 30, 1992, which granted plaintiff's application to relocate with the parties' children to Alameda, California, should be reversed, on the law and the facts and in the exercise of discretion, without costs or disbursements, and the motion to relocate denied.

MURPHY, P. J., CARRO, ROSENBERGER and RUBIN, JJ., concur.

Orders of the Supreme Court, New York County, entered April 30, 1992 and May 18, 1992, respectively, are reversed, on the law and the facts and in the exercise of discretion, without costs or disbursements, and the motion to relocate denied.