[598 NYS2d 967]

In the Matter of JODY RADFORD, Respondent, v RICKY PROPPER, Appellant.

Second Department, May 10, 1993

### APPEARANCES OF COUNSEL

*Tenzer, Greenblatt, Fallon & Kaplan,* New York City *(Leonard G. Florescue* of counsel), for appellant.

*McKee, Dorris, Peltz & Barnes,* Jericho *(Harry Peltz, Jr.,* of counsel), for respondent.

*Kovit & Molloy,* Jamaica *(Meryl L. Kovit* of counsel), *Law Guardian,* for infant.

### OPINION OF THE COURT

BALLETTA, J.

The courts of this State are regularly called upon to make decisions which affect the personal lives of people involved in divorce and remarriage. Where the divorce is acrimonious and the parties are enmeshed in the emotionalism that accompanies such trauma, Judges must ferret out the truth and make judgments which will not only be fair to the parties but will also most assuredly affect their future lives. Some of the most difficult and troublesome cases that a court is called upon to resolve involve custody and visitation issues, including the determination of what constitutes the best interests of the child. The mobility of our society creates even greater problems in those cases where the custodial parent wishes to relocate with the children of the marriage to an area at a distance from where the noncustodial parent resides. While the Court does not ignore the competing interests of the parents, we are nevertheless charged with the responsibility of protecting the child and making our decisions based upon the best interests of the child. The law is well established, and we have long recognized, that those interests require meaningful visitation which must be frequent and regular. For this reason, a custodial parent relocating to a distant place must show, as a threshold, that exceptional circumstances exist warranting that relocation, since such a move will, in and of itself, be detrimental to the relationship which a child can have with a noncustodial parent. This thorny problem becomes even more complicated where, as here, the distance is not that far in terms of actual mileage (in this case about 90 miles from the mother's home and about 50 miles from the child's former residence) but is far enough to disrupt the

relationship between the noncustodial parent and the child. Not every move will require a custodial parent to show that exceptional circumstances exist to warrant a relocation. In those cases where the noncustodial parent asks the Court to prevent a relocation, we must first determine if the relocation is so great as to trigger the threshold requirement of showing exceptional circumstances. What then is a distant move? We shall take this opportunity to provide a framework for the analysis of such situations.

The parties were married in June 1982 and have one child, Steven, born on May 10, 1983. In early 1985 the mother moved out of the marital home in Brooklyn, New York, and the parties were subsequently divorced in May 1986. Pursuant to a separation agreement, which was incorporated but not merged in the judgment of divorce, the father and mother shared joint custody of the child, with the child's primary residence being with the father. The mother was to have visitation on every Tuesday and Thursday evening from 6:00 P.M. to 8:00 P.M., alternate weekends, alternate holidays, and four weeks in the summer. Furthermore, the judgment of divorce provided that the parties agreed that neither party could take Steven out of New York, except for day trips to New Jersey and Connecticut, without prior notice to the other party. After the divorce, the father and child continued to reside with the child's paternal grandmother, who was the child's primary caretaker.

In March 1990 Steven's mother commenced a proceeding to modify the judgment of divorce to obtain sole custody of Steven. After forensic examinations and a hearing, the Family Court, Queens County, by a decision and order dated October 4, 1991, denied the mother's application for a change in custody. The court noted that Steven had lived with his father in the same home in Brooklyn since the divorce. The court also noted that it was not convinced that the child's emotional condition would necessarily be improved by a change of custody. The court concluded that while neither parent was unfit, under all the circumstances, it was in Steven's best interests to remain in the physical custody of his father since, in its view, his father could better provide him with a stable environment and continuity.

Within a few weeks after the Family Court's decision, the father informed the mother that he intended to remarry and would be relocating with the child to New Jersey from Brooklyn. The mother thereupon filed a petition seeking to enjoin

the child's removal to New Jersey. The Family Court, on December 11, 1991, granted the application to the extent of enjoining the father from removing the child to New Jersey until it had made a final determination in the matter. However, on December 18, 1991, the parties stipulated to a modification which allowed the father to take Steven to New Jersey provided that it did not interfere with the mother's visitation, that Steven continued to attend his current school in Brooklyn, and that Steven's permanent residence remained in Brooklyn. The Family Court also ordered new forensic evaluations.

Subsequently, a hearing was held before the Family Court (Clark, J.) commencing March 25, 1992. At the hearing, it was established that after Steven's father had remarried, the father and his new wife decided to move to her condominium in Lawrenceville, New Jersey, which is about 90 miles away from Steven's mother's home in Bethpage, New York. They had also contracted to purchase a new home which was under construction in nearby Cranbury, New Jersey.

Both Steven's father and his new wife were employed by the Continental Insurance Company. However, while she worked full time in New Jersey, he divided his time between the company's Manhattan office and its Cranbury, New Jersey, office. The father testified that he wanted to move to New Jersey because it would save his new wife commuting time, they could afford more in New Jersey, it was a better environment for Steven, and the school districts were excellent.

The father further testified that he was "flexible" regarding any new arrangements for visitation and stated that he would even meet Steven's mother halfway at some point on Staten Island. However, he did state that he would not be willing to transport Steven the entire way to the mother's house in Bethpage because the two-hour trip would be "unduly burdensome".

Steven's mother testified that she attended Steven's Little League games, his school plays, and his school conferences. She also testified that while it was only 32 miles from her home in Bethpage to Steven's residence in Brooklyn, it was over 90 miles to Lawrenceville, New Jersey, and that the ride could take up to three hours.

Initially, the Law Guardian made no recommendation as to which parent should have physical custody of Steven. However, by letter dated August 28, 1992, the Law Guardian

informed the parties' counsel and the Family Court that the father had moved Steven to New Jersey in violation of the court's restraining order. Noting that the school year was about to begin, the Law Guardian expressed the view that in light of the father's disturbance of the status quo by removing Steven from Brooklyn, Steven should be enrolled in a school in Bethpage.

By a decision and order dated September 11, 1992, the Family Court found that the father's move was solely for his convenience and for that of his new wife. The court further found that although the move was not intended to foreclose visitation, it would have the practical effect of terminating the weekday visitation and limit the mother's ability to be involved in Steven's school life. Moreover, the father was better able to visit Steven since the mother had to care for another infant, and he regularly worked in Manhattan. Accordingly, the Family Court determined that it was in the best interests of the child for his physical custody to be transferred to his mother. The court also established a visitation schedule for the father. The father's application to this Court for a stay of the Family Court's order was denied.

It is well established that an award of custody is a matter which rests within the sound discretion of the hearing court (see, Matter of Krebsbach v Gallagher, 181 AD2d 363, 364). Since such a determination depends upon an assessment of the credibility and character of the parties, the findings of the hearing court, which had the advantage of seeing and hearing the parties and their witnesses, will generally be accorded great deference (see, Eschbach v Eschbach, 56 NY2d 167, 173; Matter of Schouten v Schouten, 155 AD2d 461; Hemphill v Hemphill, 169 AD2d 29, 36-37; Blundell v Blundell, 150 AD2d 321, 322). Nevertheless, "[a]n appellate court would be seriously remiss if, simply in deference to the finding of a Trial Judge, it allowed a custody determination to stand where it lacks a sound and substantial basis in the record" (Matter of Gloria S. v Richard B., 80 AD2d 72, 76; see also, Matter of Krebsbach v Gallagher, supra; Klat v Klat, 176 AD2d 922, 923).

This Court has long recognized that "wherever possible, the best interests of a child lie in his being nurtured and guided by both of his natural parents" and that "a divorced, noncustodial parent and his children jointly enjoy a natural right of visitation" (Daghir v Daghir, 82 AD2d 191, 193, affd 56 NY2d 938; see also, Weiss v Weiss, 52 NY2d 170, 175; Reese v Reese,

130 AD2d 973; *Entwistle v Entwistle,* 61 AD2d 380, 384). This right is fundamental to the growth and nurturing of the parent-child relationship *(see, Meier v Meier,* 156 AD2d 348, 351; *see also, Rybicki v Rybicki,* 176 AD2d 867, 870). Thus, "[a] move to a distant locale by the custodial parent is disfavored, absent exceptional circumstances, because it deprives the noncustodial parent of the opportunity to nurture and guide the child" *(Matter of Ellor v Ellor,* 145 AD2d 773, 774; *see also, Matter of Pasco v Nolen,* 154 AD2d 774, 776). Indeed, this right to frequent and meaningful visitation is so fundamental that some Courts have stated that "[i]mplicit in the visitation provisions of a divorce decree is the prohibition against a custodial parent removing the child to a distant place, a move which necessarily frustrates visitation rights" *(Wiles v Wiles,* 171 AD2d 398, 399-400; *see also, Matter of Kelly v Kelly,* 132 AD2d 977; *Barie v Faulkner,* 115 AD2d 1003). Other Courts have stated that "in cases where the custodial parent seeks a geographic relocation that substantially affects the noncustodial parent's visitation, a presumption arises that because of 'disfavored results' * * * such relocation is not in the child's best interest" *(Hathaway v Hathaway,* 175 AD2d 336, 337, quoting *Matter of Farmer v Dervay,* 174 AD2d 857, 858; *see also, Matter of Lavelle v Freeman,* 181 AD2d 976, 977; *Matter of Farmer v Dervay, supra).*

Accordingly, this Court has repeatedly held that "in the absence of exceptional circumstances a custodial parent may not, by relocating to a distant locale, deprive the noncustodial parent of [this fundamental right to] reasonable visitation" *(Leslie v Leslie,* 180 AD2d 620, 621; *see also, Ladizhensky v Ladizhensky,* 184 AD2d 756, 757; *Rybicki v Rybicki, supra,* at 869-870). The term "distant locale" should not be read literally, as it is evident from the case law that any "geographic move will not be permitted when it would effectively deprive a parent of regular access to the child" *(Munford v Shaw,* 84 AD2d 810; *see also, Matter of Yeo v Cornaire,* 91 AD2d 1153, 1154-1155, *affd* 59 NY2d 875; *Rybicki v Rybicki, supra,* at 869). It has also been stated that "a geographic relocation that effectively deprives a noncustodial parent of access to a child will not be allowed absent exceptional or compelling circumstances" *(Matter of Ferguson v Ressico,* 125 AD2d 915; *see also, Elkus v Elkus,* 182 AD2d 45, 48; *Reese v Reese,* 130 AD2d 973, *supra).* Such cases are decided upon a case-by-case basis since each case presents its own unique set of facts and problems *(see, Hemphill v Hemphill, supra; Blundell v Blundell,* 150

AD2d 321, 324, *supra),* and each case "requires a careful balancing of the rights and problems of both the child and of his or her parents" *(Coniglio v Coniglio,* 170 AD2d 477, 478).

Additionally, while it is sometimes essential for the custodial parent to relocate for economic or personal reasons, the interests of the custodial parent must be balanced against the noncustodial parent's right to frequent visitation and the best interests of the child *(see, Rybicki v Rybicki,* 176 AD2d 867, 870, *supra; Blundell v Blundell, supra,* at 323-324). A noncustodial parent who has demonstrated a sincere interest in the child and who has exercised his or her right to regular and frequent visitation must be able to continue to enjoy frequent, regular and meaningful contact with his or her children. Scenarios in which a parent must fight traffic or run into delays at an airport, thus cutting in on meaningful visitation time, must not be ignored. Factors such as these should be considered when determining whether the noncustodial parental rights would be adversely affected by a move.

Although we do not deny that each case has its own set of circumstances, it must be noted that one principle cannot be ignored in favor of another. The evaluation of these cases has proven to be difficult; indeed, some commentators have noted that "[r]econciling the New York decisions on removal is nearly impossible" (Freed, Brandes and Weidman, Law and the Family, *Relocation: A Child's Dilemma,* NYLJ, Dec. 31, 1991, at 3, cols 1, 2; *compare, Rybicki v Rybicki,* 176 AD2d 867, *supra* [move from Northport, New York, to Fairfield County, Connecticut, a distance of 84 miles, not allowed] with *Conte v Conte,* 176 AD2d 247 [move from Queens County to Sullivan County, a distance of 125 miles, allowed]). We now think it necessary to articulate some guidelines that may be utilized in any relocation case.

Keeping in mind that "[t]he overriding concern is with the best interests of the children, which are clearly nurtured by a continued relationship with a noncustodial parent who has maintained reasonable visitation" *(Matter of Ferguson v Ressico,* 125 AD2d 915, *supra)* and that "[t]o be meaningful * * * visitation must be frequent and regular" *(Daghir v Daghir,* 82 AD2d 191, 194, *affd* 56 NY2d 938, *supra),* the threshhold question that must be answered is whether the proposed move would effectively deprive the noncustodial parent of that frequent and regular access to his or her children so as to require the relocating parent to demonstrate exceptional circumstances. Will the move be unduly disruptive of, or sub-

stantially impair, the noncustodial parent's visitation rights? *(See, Murphy v Murphy,* 145 AD2d 857, 858.) In considering this question, the court should not look solely at numerical distance, but it should also take into account other factors such as travel time, the burdens and expense involved in traveling *(e.g., Kuzmicki v Kuzmicki,* 171 AD2d 843, 845), the number of visitation hours that would ultimately be lost, the frequency of visitation, the regularity with which the noncustodial parent exercised visitation, and the involvement of the noncustodial parent in the lives of his or her children *(see, e.g., Leslie v Leslie,* 180 AD2d 620, *supra; Wiles v Wiles,* 171 AD2d 398, *supra; Rybicki v Rybicki,* 176 AD2d 867, *supra).*

Where a proposed move may, or is likely to, deprive a noncustodial parent of regular and meaningful access to and interaction with his or her children, two further tests must be satisfied by the custodial parent wishing to relocate. First, the relocating parent must establish the existence of exceptional circumstances to warrant the relocation *(see, Kuzmicki v Kuzmicki, supra,* at 844). Accordingly, there must be shown some compelling concern for the welfare of the custodial parent or the children *(see, Matter of Bonfiglio v Bonfiglio,* 134 AD2d 426, 427). Exceptional or compelling circumstances have been stated to include "exceptional financial, educational, employment, or health considerations * * * which necessitate or justify the move" *(Richardson v Howard,* 135 AD2d 1140). The burden of proving such exceptional circumstances is upon the custodial parent who seeks relocation, and it is a heavy burden *(see, Barie v Faulkner,* 115 AD2d 1003, 1004, *supra; see also, Poretsky v Poretsky,* 176 AD2d 713, 715).

It should be noted that the remarriage of the custodial parent alone is rarely a sufficient justification for allowing the custodial parent to remove the child from the State *(see, Weiss v Weiss,* 52 NY2d 170, 177, *supra; Hemphill v Hemphill,* 169 AD2d 29, 32-35, *supra).* Further, neither economic betterment nor the offer of a promotion and salary increase has been found to constitute an exceptional circumstance justifying a relocation *(see, Matter of Bonfiglio v Bonfiglio, supra; Morgano v Morgano,* 119 AD2d 734, 736-737).

Further, even if it can be shown that exceptional circumstances exist, the relocating parent must then establish that the relocation is in the best interests of the child *(see, Matter of Hollington v Cocchiola,* 180 AD2d 635, 636; *see also, Kuzmicki v Kuzmicki,* 171 AD2d 843, 845, *supra).*

In the present case, the father's proposed relocation is a distance of about 50 miles from the child's former home, and over 90 miles from the mother's home in Bethpage. By the father's own admission, such a trip was "unduly burdensome". The drive to Staten Island, where the proposed meeting point was to be, could take approximately two or three hours when considering the traffic through Brooklyn and Queens. Additionally, the father's move would terminate the mother's weekday visits and limit her ability to be involved in Steven's schooling. As such, the father's relocation would deprive the mother of meaningful access to Steven *(see, Rybicki v Rybicki, 176 AD2d 867, 870, supra)*. Without considering numerical mileage, it is clear, therefore, that the circumstances of this case required a showing of exceptional circumstances.

With this established, it can now be shown by the facts of this case that the father has failed to show that circumstances exist which would justify relocation with the child. In the present case, the relocation to New Jersey was solely for the commuting convenience of the father and his new wife. Both the father and his new wife worked for the same company; while the father's new wife worked in the company's New Jersey office, the father split his time between the New Jersey office and the company's Manhattan office. Thus, it is apparent that the father's proposed relocation to be near the company's New Jersey office was merely an accommodation to his new wife's job location and did not take into consideration the best interests of the child *(see, Matter of Atkin v McDaniel, 181 AD2d 188, 190 ["Respondent's decision to move * * * was a voluntary one motivated by purely personal reasons. It reflects, in our view, respondent's willingness to place her own interests above those of her children"])*. Further, the father's self-serving testimony that the relocation would increase his purchasing power and provide the child with a better environment did not establish exceptional circumstances warranting the relocation. Neither economic betterment nor convenience constitutes an exceptional circumstance justifying a relocation *(see, Leslie v Leslie, 180 AD2d 620, supra; Rybicki v Rybicki, 176 AD2d 867, supra; Matter of Bonfiglio v Bonfiglio, 134 AD2d 426, supra; Morgano v Morgano, 119 AD2d 734, supra; Holsberg v Shankman, 171 AD2d 1067)*. The father's reliance upon those cases wherein the courts have permitted the custodial parent's move out of State due to economic necessity *(see, e.g., Ladizhensky v Ladizhensky, 184 AD2d 756, supra)* is

misplaced since, in the present case, the relocation was not motivated by economic necessity.

Also, unlike the cases relied upon by the father, in the instant case the grandmother and not the custodial parent was the child's primary caretaker since he was 20 months old. Thus, although the child resided with his father since birth, this case is distinguishable from those cases wherein this Court gave weight to the fact that the custodial parent was the child's primary caretaker since birth *(cf., Ladizhensky v Ladizhensky, supra; Hemphill v Hemphill,* 169 AD2d 29, *supra).*

In addition, the record shows that Steven had lived with his father in the same home in Brooklyn since he was a toddler, was doing well in school, and had numerous friends in both Brooklyn and in Bethpage. Thus, any relocation would uproot the child from the familiarity of his surroundings and upset whatever stability there exists in the boy's life *(see generally, Kuzmicki v Kuzmicki,* 171 AD2d 843, *supra; Morgano v Morgano,* 119 AD2d 734, *supra; see also, Matter of Atkin v McDaniel,* 181 AD2d 188, 190, *supra* ["Respondent's relocation is also relevant to the issue of stability in the children's lives, which the courts have recognized as an important factor in determining the best interests of the children"]). Furthermore, the mother had taken advantage of her visitation rights and had developed an enriching and meaningful relationship with her son *(see, Leslie v Leslie,* 180 AD2d 620, *supra; Kuzmicki v Kuzmicki, supra; Holsberg v Shankman,* 171 AD2d 1067, *supra).*

Contrary to the father's contentions, the Family Court's determination to change custody to the mother was not an improvident exercise of discretion. Significantly, the father's relocation to New Jersey, in violation of the court's temporary restraining order, destroyed the stability and continuity upon which the Family Court based its denial of the mother's first petition for physical custody *(see, Wodka v Wodka,* 168 AD2d 1000, 1001 ["defiance of a court order is but one factor to be considered when determining the relative fitness of the parties and what custody arrangement is in the child's best interest"]; *see also, Ideman v Ideman,* 168 AD2d 1001; *Entwistle v Entwistle,* 61 AD2d 380, *supra).* Further, although the forensic examinations found that neither party was without problems and that neither party was an "unfit" parent, the initial forensic examinations found the mother to be more attuned to the child's needs and that the child felt psychologically closer

to his mother. Moreover, although the father has greater financial resources, it cannot be said that the mother will be unable to provide the child with a stable home environment. Additionally, the record reveals that the mother is the more available parent since she works only part time. Therefore, it cannot be said that the Family Court's determination was without a sound and substantial basis.

Further, the father contends that before awarding custody to the mother, the Family Court should have granted him custody conditioned upon his return to Kings County. However, in view of our determination that there was a sound and substantial basis for the Family Court's order transferring custody to the mother, we do not believe that it was an improvident exercise of discretion to reject such a condition. Accordingly, under the totality of the circumstances of this case, we shall not disturb the Family Court's determination.

Finally, we find that the Family Court's visitation schedule allows the father frequent, regular, and meaningful contact with the child, and will not be disturbed (see, *Ladizhensky v Ladizhensky,* 184 AD2d 756, *supra*).

MANGANO, P. J., BRACKEN and SULLIVAN, JJ., concur.

Ordered that the order is affirmed, with costs.