■ In the Matter of RAYMOND E. J. McGEE, Appellant, v PAMELA C. McGEE, Respondent. [637 NYS2d 816] —Peters, J. Appeal from an order of the Family Court of St. Lawrence County (Rogers, J.), entered November 14, 1994, which, inter alia, granted respondent's cross petition, in a proceeding pursuant to Family Court Act article 6, for sole custody of the parties' child.

The parties herein were both raised in Pennsylvania where their parents and most of their relatives resided. In October 1989, they moved to West Virginia to pursue an investment in a convenience store. They married on May 7, 1991, and continued to reside in West Virginia until the business was forced to close in May 1992. At such time, respondent was pregnant and working as a licensed hairstylist. Petitioner wanted to move to St. Lawrence County where his sister lived along with her husband and their two children. Respondent protested and urged petitioner to wait until the birth of their child. Notwithstanding the fact that the parties had no pre-arranged housing and no employment prospects, petitioner packed up his eight-month pregnant wife, hired a rental truck and moved to his sister's home where they lived until December 1992.

After the move, the parties found a local obstetrician who asked them to find another doctor after three visits. Respondent testified that she was told to change obstetricians because petitioner insisted that the doctor prescreen with him all procedures that pertained to the pregnancy and the birth of their child.

On September 13, 1992, the child Sabrina was born. Thereafter in December 1992, the family moved to a single-wide trailer. Throughout the time that the parties lived in St. Lawrence County, no effort was made by either of them to obtain employment. They used the moneys received from social services assistance to support their daily living. Petitioner testified that he was intimately involved with the care of Sabrina at all times since her birth, but Family Court found his testimony not to be credible. Rather, Family Court credited the testimony of respondent that she was the primary caretaker and that petitioner manipulated her and demeaned her through verbal and physical intimidation, both in public and in front of the child.

Testimony further revealed that in the early part of 1993, respondent asked to go visit her family in Pennsylvania and petitioner refused to allow her to go. However, on February 20, 1993, after receiving a bus ticket paid for by her family, respondent took the child with her and traveled to her parent's home where she remained for eight weeks. Respondent testified that while she was in Pennsylvania, petitioner called her four times per week and wrote her at least one letter, promising to stop demeaning her in public, yelling at her in front of Sabrina and generally being self-centered. In late March or early April 1993, petitioner told respondent that he would

move to Pennsylvania but that he needed help packing and moving. Based upon his promise to return, she agreed to go back to St. Lawrence County to assist him with the move. Unbeknownst to respondent, before he even arrived in Pennsylvania with his sister's borrowed car to pick her up, petitioner had changed his mind about moving. The night after their return to New York, he told her that he had no intention of moving to Pennsylvania.

Notwithstanding petitioner's avowed remorse as expressed in his letter written to respondent while she and their child were in Pennsylvania, marital discord continued and escalated. Testimony was proffered concerning instances where petitioner continued to be physically abusive or intimidating toward respondent, as well as displaying, at all times, a controlling attitude toward her. Respondent testified that on separate occasions petitioner grabbed her by the throat and pushed her down, pushed her on the chest, all while she was holding their child. He had later backed her into a corner without letting her by in order to physically intimidate her. Respondent additionally testified that when she attempted to take Sabrina to church one day, petitioner rendered the automobile engine inoperable. Petitioner refused to give Sabrina to respondent on this occasion, as well as others, including what ultimately became another departure by respondent on June 6, 1993 to live temporarily in a safe-house.

After filing a family offense petition, respondent was granted a temporary order of protection and custody of Sabrina. Respondent resumed living with the child in the marital residence on June 11, 1993, at which time petitioner moved out. Petitioner was allowed visitation during this time.*

On June 15, 1993, petitioner commenced this proceeding seeking sole custody of Sabrina. Respondent answered and cross-petitioned seeking dismissal of the petition, sole custody and permission to move to Pennsylvania with Sabrina. By order entered November 14, 1994, Family Court, *inter alia*, gave sole legal custody of the child to respondent and allowed her to relocate with Sabrina to Pennsylvania. The court also granted petitioner visitation, addressing his possible residency in both New York and Pennsylvania. Petitioner appeals.

---

* Two other temporary orders of protection were issued on June 18, 1993 and September 8, 1993. Respondent also filed a violation summons and petition on November 11, 1993, alleging a violation of the June 18, 1992 order of protection. Family Court found that petitioner had used abusive language toward respondent on several occasions and that on June 4, 1993, petitioner touched respondent so as to threaten and harass her. Based on these findings, Family Court ordered petitioner to abstain from such conduct.

Seeking reversal, petitioner, citing *Matter of Radford v Propper* (190 AD2d 93), contends that Family Court failed to apply current law concerning a geographic relocation of the child. It thereby failed to address whether the proposed move will disrupt a current pattern of meaningful visitation between the noncustodial parent and child, and if so, whether the relocating parent can then establish the existence of exceptional circumstances to warrant the relocation (*see, supra*). He argues that the court focused solely upon a best interests analysis and that, in doing so, failed to analyze the appropriate factors.

Petitioner is correct in his contention that Family Court did not explicitly follow the analytical framework set forth in *Matter of Radford v Propper* (*supra*). However, since our authority in these matters is as broad as that of the trial court, and since the record is sufficient to enable us to apply the appropriate standard (*see, Matter of Dacey v Dacey*, 214 AD2d 790), we conclude that the record supports petitioner's contentions that respondent's relocation to Pennsylvania would deprive him of his customary pattern of visitation and would therefore be disfavored unless exceptional circumstances are present (*see, Matter of Sheridan v Sheridan*, 204 AD2d 771; *Jacoby v Carter*, 167 AD2d 786; *Matter of Ellor v Ellor*, 145 AD2d 773).

Following our decisions in *Matter of Sheridan v Sheridan* (*supra*) and *Matter of Atkinson v Atkinson* (197 AD2d 771), we find that due to the dire financial constraints which respondent would continue to experience were she forced to remain domiciled in New York, combined with petitioner's physically violent and intimidating behavior toward her, that sufficient exceptional circumstances have been shown to justify respondent's relocation with the child. It is particularly notable that both parties admitted that neither attempted to pursue gainful employment while they resided here, save some five weeks of employment by petitioner, and that other than petitioner's sister, their families reside in Pennsylvania. The record further reflects that respondent, upon her return to Pennsylvania, promptly acquired employment as a licensed hairstylist to provide support for herself and her daughter.

Concerning petitioner's allegation that Family Court failed to consider relevant factors in determining the best interest of the child, we disagree. Family Court granted respondent sole custody based, *inter alia*, upon its finding that she was the primary caretaker and that joint custody was not appropriate due to petitioner's domineering attitude toward respondent. We find the court to have properly reviewed the relevant factors, including suggested home environments, ability to secure

employment, ability to secure care for Sabrina, the stability and fitness of each parent, the ability of each to provide for the emotional and intellectual well-being of their child, and which parent would facilitate a nurturing relationship with the other to further protect the noncustodial parent's rights to visitation. We further find that Family Court provided meaningful access to petitioner so as to promote his relationship with his daughter, which includes alternate weekends, half of school vacations, half of the summer and additional visitations as the parties agree.

Mikoll, J. P., Crew III, White and Casey, JJ., concur. Ordered that the order is affirmed, without costs.

