■ In the Matter of DAVID RAYBIN, Respondent, v LINDA L. RAYBIN, Appellant. (And Another Related Proceeding.) [613 NYS2d 726] —Cardona, P. J. Appeal from an order of the Family Court of Broome County (Ray, J.), entered August 16, 1993, which, *inter alia,* granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, to relocate with the parties' children.

The parties were married in 1971 and have two children, Melissa (born in May 1979) and Rebecca (born in January 1981). The parties resided in the Town of Vestal, Broome County, and separated by written agreement dated March 25, 1988 which provided for, *inter alia,* joint legal and physical custody of the children, residence in the same school district, and, if either party moved from the "area", the other party would obtain primary physical custody of the children. The parties divorced in 1989 and petitioner remarried in October 1991. In March 1992, petitioner lost his position when IBM

closed its Glendale Lab in Broome County. Petitioner inquired concerning other employment including positions with other companies; however, when asked by IBM to transfer to Westchester County, petitioner accepted the transfer and purchased a residence in New Fairfield, Connecticut. In August 1992, petitioner applied to Broome County Family Court for permission to relocate the children to Connecticut. Respondent agreed and the parties entered into a stipulation, reduced to an order, which provided for joint custody with primary physical custody in petitioner and a fixed schedule of visitation for respondent. Petitioner resided with the children and his new spouse in Connecticut from September 1992 until approximately July 1, 1993.

In January 1993 petitioner learned that his job in Westchester County was being eliminated and that the company had a position available, at the same rate of pay, in Boca Raton, Florida. Petitioner interviewed for the position. He was offered the job and accepted it. Petitioner never sought other employment with IBM outside of Westchester County or with any other companies. In March 1993, petitioner commenced this proceeding seeking to modify respondent's visitation based upon his impending relocation to Florida.[1] Respondent cross-petitioned to prevent petitioner's relocation and to modify custody. At the fact-finding hearing, a court-appointed psychiatrist refused to opine what was in the children's best interests but did opine that continuity of care was a positive thing. The Law Guardian, in making his recommendation, noted the "tremendous" relationship which respondent enjoyed with the children, questioned whether petitioner had met his burden of establishing extraordinary circumstances to permit so "drastic" a move, but in addressing best interests stated that the continuity factor tipped the scales in favor of allowing the move. The children were also interviewed in camera.

Family Court found, *inter alia*, that petitioner showed extraordinary circumstances and that it was in the best interests of the children to relocate with petitioner to Florida. The court ordered joint legal custody with primary residence in petitioner and liberal visitation to respondent, as agreed to by the parties. Respondent appeals.

In a recent case involving relocation, this Court reviewed the pertinent law: "[A] geographic relocation which substantially affects the visitation rights of the noncustodial parent

---

1. Petitioner, the children and their stepmother relocated to Florida in early July 1993.

gives rise to the presumption that 'such relocation is not in the child's best interest' *(Hathaway v Hathaway,* 175 AD2d 336, 337; *see, e.g., Matter of Lake v Lake,* 192 AD2d 751, 752; *Matter of Atkin v McDaniel,* 181 AD2d 188, 189; *Matter of Lavelle v Freeman,* 181 AD2d 976, 977). The presumption may be rebutted 'upon a showing of exceptional circumstances by the relocating parent' *(Hathaway v Hathaway, supra,* at 337). The emerging trend which justifies relocation requires proof that the move is necessitated by *economic necessity* rather than economic betterment or mere economic advantage" *(Matter of Atkinson v Atkinson,* 197 AD2d 771, 772 [emphasis in original]). The exceptional circumstances standard may include " 'exceptional financial, educational, employment, or health considerations * * * which necessitate or justify the move' *(Richardson v Howard,* 135 AD2d 1140; *see, Poretsky v Poretsky,* 176 AD2d 713, 715)" *(Matter of Atkinson v Atkinson, supra,* at 772). Only when the custodial parent has made a sufficient showing of exceptional circumstances will the focus shift to the standard of whether the best interests of the children will be furthered by the move *(supra).*

Therefore, the primary issue is whether petitioner has sustained his burden of demonstrating exceptional circumstances to justify his relocation. This case, like every other custody case involving relocation, must be decided on its own facts. Initially, we note that the record clearly establishes that respondent has taken full advantage of her visitation rights with her daughters and has maintained an enriching and meaningful relationship with them *(see, Matter of Radford v Propper,* 190 AD2d 93, 102). There is no question that the relocation to Florida will adversely impact on the children's best interests for they will be deprived of meaningful access to their mother *(see, Matter of Grover v Grover,* 144 AD2d 852, 853; *cf., Radford v Propper, supra).*

After 23 years of employment and having attained an income level of $104,000, petitioner, like so many other employees caught up in the reorganization and downsizing of corporate America, was once again, after only eight months, confronted with the elimination of his job. Given these circumstances, petitioner argues that his relocation some 1,500 miles away was justified. We might agree if the record *demonstrated* that his relocation was a matter of economic necessity. Here, however, by his own admission, petitioner made no effort to secure other employment before accepting his company's offer of a transfer to Florida. The record shows that company tenure and personal preference were primary considerations

for petitioner's immediate acceptance of the transfer to Florida. At trial, when asked if he intended to reside in Boca Raton regardless of the outcome of the trial, petitioner responded, "It is my intention to reside there as long as I have a job with IBM and IBM wants me there, yes". Petitioner also admitted that he liked Boca Raton better than New York and desired to return[2] to that community, in part, because his best friend lived there.

Under the totality of these circumstances, it was not unreasonable to require proof of a second job search even though petitioner's first search eight months earlier proved unsuccessful.[3] Absent proof in the record to support his self-serving claim that no other position within or without IBM was available in New York (or presumably, a contiguous State), we cannot conclude that petitioner's employment-related relocation rises to the level of economic necessity *(see, e.g., Matter of Atkinson v Atkinson, supra; Temperini v Berman,* 199 AD2d 399)*. Were we to accept petitioner's relocation without compelling proof of the need therefor, we would be sanctioning all employment-related transfers based upon nothing more than the *perception* that nonacceptance will jeopardize a custodial parent's current income. The "special balancing" *(see, Matter of Pasco v Nolen,* 154 AD2d 774, 775-776) now required in relocation cases between the needs of the primary custodial parent and the joint right of access enjoyed by both the noncustodial parent and the children *(see, Weiss v Weiss,* 52 NY2d 170, 174-175) would be rendered meaningless.

It is important that children and parents have meaningful access to each other so they have the opportunity on a regular basis to share their feelings, concerns, and love. Children have the right to be nurtured and guided by both parents. There is no question in the instant proceeding, as in most situations, that the children need and want both parents. Efforts must be made to keep both parents involved in the children's lives. One of the primary responsibilities of a custodial parent is to assure meaningful contact between the children and the other parent *(see, Bliss v Ach,* 56 NY2d 995).

Based upon the foregoing, we find that Family Court improperly exercised its discretion by granting petitioner's application for relocation and accordingly modify the order by

---

2. Petitioner, respondent and the children had previously transferred to Boca Raton for IBM and resided there between 1984 and 1985.

3. This is particularly so because the extent of that search is not fully developed in the record.

awarding respondent primary physical custody of Melissa and Rebecca, effective August 1, 1994, with reasonable and liberal visitation to petitioner as agreed to by the parties, or pursuant to further court order, unless petitioner relocates the children's residence to a locale no greater than 200 miles distant from Vestal.

Crew III, Casey, Weiss and Yesawich Jr., JJ., concur. Ordered that the order is modified, on the law and the facts, by reversing so much thereof as granted petitioner's application for relocation and partially denied respondent's cross application; petitioner's application denied and respondent's application granted to the extent of awarding her primary physical custody of the parties two children, Melissa and Rebecca, effective August 1, 1994, with reasonable and liberal visitation to petitioner as agreed to by the parties or pursuant to further court order, unless petitioner relocates the children's residence to a locale no greater than 200 miles distant from the Town of Vestal, Broome County; and, as so modified, affirmed.