Matter of Candy H. v Justin G. (2004 NY Slip Op 50176(U))

[*1]

Matter of Candy H. v Justin G.

2004 NY Slip Op 50176(U)

Decided on March 29, 2004

Family Court, Orange County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 29, 2004

Family Court, Orange County
In the Matter of a Proceeding under Article 6 of the Family Court Act, CANDY H., Petitioner,
against
JUSTIN G., Respondent. In the Matter of a Proceeding under Article 6 of the Family Court Act, JUSTIN G., Petitioner, CANDY H., Respondent.
Docket No. V-3361-03

Carol S. Klein, J.
The Court has before it two custody petitions. The first is a petition by Justin G. seeking custody of his minor son, Christopher, born 8-12-99 filed on June 9, 2003. The second is a petition filed by Candy H., Christopher's mother, also seeking custody, filed on June 11, 2003. Ms. H. also has a petition seeking an order of protection against Justin G. also filed June 11, 2003 [FN1]. This Court granted a temporary order of protection on June 11, 2003 to Ms. H. along with temporary physical custody of Christopher.
Since June 11, 2003, the matter concerning the custody of Christopher has been pending before this Court and was ultimately completed on March 2, 2004. In the interim, on July 1, 2003, a neglect proceeding was also filed by the Orange County Department of Social Services against both parents. That petition resulted in an order granting to Respondents an adjournment in contemplation of dismissal so long as certain terms and conditions set forth in the order are met over the next twelve months.
In connection with the two custody petitions, the Court ordered mental health evaluations of both parties, the child, and Mr. G.' parents, with whom he resides. In addition, both parties were directed to appear for drug and alcohol evaluation at the Horton Family Program. The [*2]hearing in this matter commenced in December 2003 and continued until March 2, 2004.[FN2] The Court heard from several witnesses, as well as the parties and the Court appointed mental health evaluator. Ever mindful of the factors to be considered in assessing what is in the best interest of this child, the Court carefully weighed the evidence and assessed the credibility of the witnesses. After, having done so, the Court finds that an award of sole custody to the mother would best serve the child's interests for the reasons set forth herein.
LAW
In adjudicating custody and visitation issues, the most important factor to be considered is the best interest of the child (see, Eschbach v Eschbach, 56 N.Y. 2d 167, (1982)). In determining the best interest of the child, the courts must evaluate the "totality of [the] circumstances" (Friederwitzer v Friederwitzer, 55 N.Y. 2d 89 (1982)). The court's determination is based to a great extent upon its assessment of the credibility of the witnesses and the character, temperament, and sincerity of the parents. (Matter of Irene O., 38 N.Y. 2d 776, (1975); see Eschbach v Eschbach, supra at 173).
Any court in considering questions of child custody must make every effort to determine "what is for the best interest of the child, and what will best promote his welfare and happiness". (Domestic Relations Law, § 70; Matter of Ebert v Ebert, 38 N.Y. 2d 700 (1976); Obey v Degling, 37 NY2d 768 (1975); Matter of Lincoln v Lincoln, 24 N.Y. 2d 270 (1969); Bistany v Bistany, 66 A.D. 2d 1026 (4TH Dep't 1978); Sandman v Sandman, 64 A.D. 2d 698, mot for lv to app den 46 N.Y. 2d 705 (1978); Matter of Saunders v Saunders, 60 A.D. 2d 701 (3d Dep't 1977). Primary among those circumstances to be considered is the quality of the home environment and the parental guidance the custodial parent provides for the child. (Matter of Ebert v Ebert, 38 N.Y. 2d 700 (1976), Bistany v Bistany, 66 A.D. 2d 1026 (4TH Dep't 1978); Sandman v Sandman, 64 A.D. 2d 698, mot for lv to app den 46 N.Y. 2d 705, Matter of Saunders v Saunders, 60 A.D. 2d 701 (3d Dep't 1977). While concerns such as the financial status and the ability of each parent to provide for the child should not be overlooked by the court, an equally valid concern is the ability of each parent to provide for the child's emotional and intellectual development. (Sandman v Sandman 64 A.D. 2d 698, mot for lv to app den 46 N.Y. 2d 705; Porges v Porges, 63 A.D. 2d 712 2d Dep't 1978); Matter of Saunders v Saunders, 60 A.D. 2d 701 (3d Dep't 1977)). As is relevant to any case, among the factors to be considered by the court in making a custody determination are: "the parental guidance the custodial parent provides for the child; the ability of each parent to provide for the child's emotional and intellectual development; the financial status and ability of each parent to provide for the child; [and] the overall relative fitness of the parties" (Matter of Rosiana C. v Pierre S. (191 A.D. 2d 316 (2d Dep't 1993); see also, Eschbach v Eschbach, 56 N.Y. 2d 167(1982)).
Additionally, "the effect that an award of custody to one parent might have on the child's relationship with the other parent" is also a proper and relevant consideration (Bliss v Ach, 56 N.Y. 2d 995 (1st Dep't 1982). "[O]ne of the primary responsibilities of a custodial parent is to [*3]assure meaningful contact between the children and the other parent" (Matter of Raybin v Raybin, 205 A.D. 2d 918, 921(3d Dep't 1994)), and the willingness of a parent to assure such meaningful contact between the children and the other parent is a factor to be considered in making a custody determination (see, O'Connor v O'Connor, 146 A.D. 2d 909, 910 (3d Dep't 1989); Lohmiller v Lohmiller, 140 A.D. 2d 497,498 (2d Dep't 1988)).
In this case, it was clear that the father and his family have great disdain and arrogance towards the mother because of her financial and social status. In this Court's opinion that would make the father unfit to be the custodial parent "since his attitude would substantially interfere with his ability to place the needs of the child before his own in fostering a continued relationship with the non-custodial parent" (Janecka v Franklin, 150 A.D. 2d 755, 757 (2d Dep't 1989); also, Matter of Mahoney v Marrano, 134 A.D. 2d 834 4th Dep't 1987)).
While no one factor is to be considered determinative, the Court is bound to consider one very critical issue as a statutory mandate—that is the presence of domestic violence. (See, Fam. Ct. Act §651 (b), Dom. Rel. Law §240, Wissink v. Wissink, 301 A.D. 2d 36 (2d Dep't 2002)
FINDINGS OF FACT
The parties in this case began their relationship in May of 1998 when they were each about 25 years old. Christopher was born in August of 1999. It was Ms. H.'s testimony that Mr. G. changed when she became pregnant in that he became more controlling and after the child was born, he became mean. She asserted that Mr. G. was violent and inflicted both physical and emotional abuse upon her. It was undisputed that this behavior took place in front of the child Christopher.
Ms. H. was placed into the foster care system when she was young because her mother was dying from hepatitis as a result of alcohol abuse. She moved around a lot from foster family to group homes and in her words, made the best of it. Because of that Ms. H. does not have close family support or contacts. Although she has met her biological father, she has no relationship with him. It was her opinion that her father is prejudiced and does not approve of her relationships with "people of color" and she does not want this type of attitude taught to her son. Ms. H. currently receives a number of support services through the Department of Social Services. These services are made available in part, because of the prior neglect petition filed against her. However, the collateral contacts associated with those services testified that Ms. H. has cooperated with and benefitted a great deal from those services. She was able to admit her problems and work towards a positive change to benefit her child. Mr. G. on the other hand has not been as willing to admit his shortcomings. Ms. H. has followed through with all recommendations and requirements and it was the clear opinion of those working with her that there was no reason to remove the child from her custody. She is a fit and loving parent in spite of her problems and not a danger to the child.
The problems that Ms. H. faces/faced include drug and alcohol abuse, as well as mental health issues for which she is medicated. However, since the inception of this case, with the exception of the initial d/a evaluation, she has remained clean and sober. Her bi-polar disorder is treated with medication.
This Court found Ms. H. to be a credible, sincere witness. She appeared to this Court to be humble and focused on improving her life and providing the best for her son. In addition to [*4]the other uphill challenges Ms. H. faces, she is currently receiving welfare and has no means of private transportation. The Mental Health evaluator was concerned that financially Ms. H. could only minimally provide for the child. However, how much money one makes, or has, does not ensure a parent's ability to provide for a child's emotional and intellectual development. It is this Court's opinion that Ms. H. has a greater ability to meet those needs of the child.
On the other hand, Justin G., the child's father, is gainfully employed, and resides in his family's home with numerous bedrooms. However, this Court found his testimony to be less credible and to display an air of arrogance. The Court was extremely uncomfortable with Mr. Grime's attitude toward people of African-American heritage as well as the language that he uses to describe people of non-Caucasian heritage.
Although at times mutual, this Court believes that Mr. G. did inflict abuse, both physical and emotional upon Ms. H. in front of the child, and in spite of the neglect petition filed against him, he has made no showing that he has attended anger management or other batterer classes to correct his behavior. It was particularly troubling to the Mental Health evaluator and to this Court that the child also began striking his mother during a physical assault by the Mr. G. upon Ms. H.. The child also referred to his mother as a bad girl during his interview with the Court evaluator, although he was not able to explain what he meant by that statement. These two incidents lead this Court to believe that the child has been witness to bad behavior and/or listened to derogatory comments about his mother. This is not behavior that will contribute to the emotional and intellectual development of this young child.
Ms. H. appears to have more of an open mind about the child having a relationship with his father and father's family. The Court is confident that she will continue to foster a relationship between the G. family and her son. Ms. H. has made it clear to this Court that it is important to her that her son know his father. On the other hand, Mr. G. did not give this Court the impression that he understood the importance of that responsibility.
Both parties have made poor choices since this child was born with regard to "people, places and things" and both seem to have engaged in instances of violence against one another. However, Ms. H. has been the primary care-taker of this child since he was born and more than one expert involved with the case, saw no reason to remove the child from her care. This Court agrees. However, visitation with Mr. G. and his family should be frequent and liberal as the child is clearly bonded with his paternal relatives. The visitation issues however must be carefully balanced against the concerns raised in Ms. H.'s family offense petition against Mr. G.. In order to avoid future conflict in front of the child, the Court has granted Ms. H. a permanent order of protection with provisions requiring Mr. G. to stay away under certain circumstances. To protect the child from any further violence, transportation for visitation is to be provided by Nilsa or Henry G.[FN3] until such time as the Permanent Order of Protection expires. This provides the child with access to his paternal grandparents as well.
Now, therefore, upon due deliberation and consideration it is hereby,
ADJUDGED, ORDERED, and DECREED, that is in the best interest of the child Christopher G., that sole physical and legal custody be awarded to his mother, Ms. Candy H.; and it is further
[*5]
ORDERED, that Mr. Justin G. shall have visitation with Christopher every other weekend commencing at 6:00 pm Friday evening until Sunday evening at 6:00 pm, and it is further
ORDERED, that Mr. Justin G. shall have additional visitation with Christopher every Wednesday evening for a dinner visit commencing at 5 pm until 7:30 pm; and it is further,
ORDERED, that transportation to and from visitation with Mr. Justin G. shall be provided by his parents, Nilsa and/or Henry G. until the Permanent Order of Protection expires, and it is further
ORDERED, that should Mr. G.' parents be unwilling or unable to provided transportation for their Grandchild to and from his visitation with his father, Mr. G. shall make arrangements for another duly licensed driver to provide such transportation;
ORDERED, that should a Monday (ie., holiday fall on the weekend of Christopher's visit with his father, he shall be permitted to stay until 6:00 pm that Monday evening; and it is further
ORDERED, that until further order of this Court, neither parent shall have overnight partners in their residence at times when the child is with them.
ORDERED, the child shall spend Mother's Day with his mother and Father's Day with his Father; and it is further
ORDERED, The father shall have the child on the following holidays in odd years New Years Day, Presidents' Day, Easter Sunday, Independence Day, Columbus Day, Veterans Day, and Christmas Day, and in even years on Martin Luther King Day, Memorial Day, Labor Day, and Thanksgiving Day
As to those holidays which occur during the school year, the holiday shall be the day on which the school district the child is attending observes the holiday.
The father's holiday sequence shall begin with Memorial Day, 2004. It is the intent of the court that neither parent will have the child for the same holiday for two consecutive years. Contact on the above, or any other single day holidays shall commence at 9:00 AM and end at 6:00 PM unless otherwise agreed to by the parties; and it is further
ORDERED, that the mother shall have the child on her birthday each year and the father shall have the child on his birthday each year; and it is further
ORDERED, each parent shall have complete access to all health care records, information and providers concerning all matters relating to the mental and physical well-being of the child; a copy of all health care information received by one parent shall be provided to the other within 48 hours of receipt; each parent, while the child is in his or her care, shall inform the other of any illness, injury or condition which confines a child to bed for more than three days or which requires medical intervention; each parent shall sign releases or other documents necessary and/or required to permit the other to have access to health care information and/or provider; and it is further
ORDERED, that each parent shall have complete access to all school records and all personnel involved with the education of the child; a copy of all report cards, school bulletins and schedules of events, PTA meetings and the like or any other material received from any school the child is attending shall be provided to the other parent within 48 hours of receipt; each parent shall sign releases or other documents necessary and/or required to permit the other parent to have full access to such educational records and/or providers; and it is further
[*6]
ORDERED, that each parent shall advise the other of any special events, dinners, ball games, plays, recitals and the like in which the child is involved and which parents may attend; advice about such events shall be given by one parent to the other within 48 hours of receipt; and it is further
ORDERED, that each parent shall encourage the free exercise of the visitation/custodial rights of the other; neither parent shall do any act or make any statement which would directly or indirectly tend to defeat or make exercising visitation/custodial rights of the other parent more difficult; which would tend to disappoint the child; which is derogatory of the other parent; or, which would discourage the child from contact with the other parent. Neither parent shall allow, condone or encourage any other person to engage in any conduct which is contrary to the above provisions. In exercising custodial/visitation rights each parent shall consider the wishes and plans of the child when he is old enough to express his wishes; and it is further
ORDERED, that the father is to make every effort to ensure that during the period of the Order of Protection his parents shall arrive on time for any scheduled pick-up or return of the child; the child shall be provided with clean, adequate and suitable clothing for any scheduled visitation period and the same or comparable clothing shall be returned at the conclusion of the visit; and it is further
ORDERED, that neither parent shall expose the child to any conduct or activity which would endanger the physical, mental or moral well-being of the child; and it is further,
ORDERED, that each parent shall keep the other advised of his/her current address and telephone number; if a child is to be outside the State of New York for any reason for a period in excess of 72 hours, the parent allowing the child to be at such location shall inform the other parent, in advance, where the child will be and, when possible, the address and telephone number where the child may be reached while outside the State of New York; and it is further
ORDERED, that during any period that the child is with one parent, reasonable, peaceful and private telephone contact between the child and the other parent shall be allowed between the hours of 9:00 AM and 7:00 PM; and is it further
ORDERED, each parent shall keep the other advised of the name and telephone number of any day care or other child care provider used on a regular basis or during a school vacation period; and it is further
ORDERED, that transportation to and from all visitation is to be provided by Mr. G.' parents Nilsa or Henry G. until such time as the Order of Protection expires [FN4]; after which time, Mr. Justin G. shall be responsible for the transportation; and it is further
ORDERED, that The terms of this order are based on the present residence of the parents. Neither parent shall move more than 50 miles from his/her current residence without first giving the other parent at least 90 days prior notice, in writing. In any event, if the contemplated move is in excess of 50 miles or will significantly impair the visitation/custody rights granted herein, prior court approval of such move shall be obtained, unless both parents agree, in writing; and it is further
ORDERED, that the "BILL OF RIGHTS FOR CHILDREN WHOSE PARENTS ARE SEPARATED" attached hereto is made a part of this order and both parents shall respect [*7]and comply with each of those rights.
This constitutes the decision and order of the Court.
Dated: March 29, 2004
 Goshen, NY
E N T E R
Hon. Carol S. Klein, JFC
.

BILL OF RIGHTS
FOR CHILDREN WHOSE
PARENTS ARE SEPARATED
1.THE RIGHT NOT TO BE ASKED TO "CHOOSE SIDES" BETWEEN THEIR PARENTS.
2.THE RIGHT NOT TO BE TOLD THE DETAILS OF BITTER OR NASTY LEGAL PROCEEDINGS GOING ON BETWEEN THEIR PARENTS.
3.THE RIGHT NOT TO BE TOLD "BAD THINGS" ABOUT THE OTHER PARENT'S PERSONALITY OR CHARACTER.
4.THE RIGHT TO PRIVACY WHEN TALKING TO EITHER PARENT ON THE TELEPHONE.
5.THE RIGHT NOT TO BE CROSS-EXAMINED BY ONE PARENT AFTER SPENDING TIME WITH THE OTHER PARENT.
6.THE RIGHT NOT TO BE ASKED TO BE A MESSENGER FROM ONE PARENT TO THE OTHER.
7.THE RIGHT NOT TO BE ASKED BY ONE PARENT TO TELL THE OTHER PARENT UNTRUTHS.
8.THE RIGHT NOT TO BE USED AS A CONFIDANT REGARDING THE LEGAL PROCEEDINGS BETWEEN THE PARENTS.
9.THE RIGHT TO EXPRESS FEELINGS, WHATEVER THOSE FEELINGS MAY BE.
[*8]
10.THE RIGHT TO CHOOSE NOT TO EXPRESS CERTAIN FEELINGS.
11.THE RIGHT TO BE PROTECTED FROM PARENTAL WARFARE.
12.THE RIGHT NOT TO BE MADE TO FEEL GUILTY FOR LOVING BOTH PARENTS.
Decision Date: March 29, 2004
Footnotes

Footnote 1:The disposition of that petition is the subject of a separate order, a copy of which is attached hereto and made a part hereof.

Footnote 2:Mr. G., appeared personally and by his counsel, David Bernz., Esq., and Ms. H., appeared personally and by her counsel, the Legal Aid Society Inc., (Maria A. Patrizzio, Esq., of counsel) and the child was represented by The Children's Rights Society, Inc., (Michelle Stevenson, Esq., of counsel). 

Footnote 3: Paternal Grandparents of child.

Footnote 4:April 1, 2006