Matter of C.O. v M.M. (2006 NY Slip Op 50556(U))

[*1]

Matter of C.O. v M.M.

2006 NY Slip Op 50556(U) [11 Misc 3d 1074(A)]

Decided on April 5, 2006

Family Court, Westchester County

Duffy, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 5, 2006

Family Court, Westchester County
In the Matter of C.O., Petitioner,
against
M.M., Respondent.
V-126XX-04/05

Theresa Malach, Esq.
470 Mamaroneck Avenue
White Plains, New York 10605
Law Guardian
Vincent P. D'Andrea, Esq.
D'Andrea and Goldstein
700-720 White Plains Road Scarsdale, New York 10583
Attorney for Respondent
Gregory Salant, Esq.
Harold, Salant, Strassfield & Spielberg
81 Main Street
White Plains, New York 10601
Attorney for Petitioner

Colleen D. Duffy, J.
Petitioner-father C.O. filed a petition, dated November 3, 2005, seeking to modify the terms of the prior order of this Court, entered July 12, 2005 (July 12 Order), regarding his visitation rights with the Subject Child E.M. . Specifically, Petitioner-father is seeking the right to have his daughter attend his wedding on May 12, 2006.[FN1] He also wants the child to attend the rehearsal dinner the day before the wedding and the photography sessions immediately before and after the wedding ceremony. Respondent-mother objects contending that she will be taking the child on vacation out of the country during that time period (May 8 through May 12, 2006) and that the July 12 Order provides that she has vacation preference during even-numbered years for selecting vacation when the parties cannot agree on vacation dates. Although Respondent-[*2]mother will be arriving back to New York on May 12, it will be after the 4:00 p.m. wedding ceremony.
The Court held a hearing in this matter on March 30, 2006. Each of the parties testified as well as D. J., the brother-in-law of Respondent-mother. The Court has considered all of the testimony and evidence submitted, and for the reasons set forth below, will deny the Petitioner-father's request for visitation for the child to attend the rehearsal dinner, but finds that it is in the Subject Child's best interests for the July 12 Order to be modified to allow the child to attend her father's May 12, 2006 wedding as set forth further in this Order.
In adjudicating custody and visitation rights, the most important factor to be considered is the best interests of the child in view of all the circumstances. McDonald v. McDonald, 216 AD2d 276 (App. Div. 2nd Dept. 1995)(affirming trial court's decision modifying a prior order by giving expanded and unsupervised visits); Ford v. Peele, 250 AD2d 767 (App. Div. 2nd Dept. 1998).
Here, the July 12 Order gave Respondent-mother sole custody of the Subject Child with both parties receiving, along with other access: "two (2) weeks uninterrupted vacation access time with the child, during the calendar year, each week to be taken non-consecutively." The July 12 Order further provides that "each party shall notice the other of his and her intended vacation weeks, in writing, by May 15th of each calendar year, the Mother to have first choice of vacation weeks in even years and the Father to have first choice of vacation weeks in odd years, if the parties can not agree to their respective vacation access. . ."
The Court notes that the Mother's scheduled vacation from May 7 through May 14 - precedes the vacation weeks contemplated by that portion of the July 12 Order allowing each of the parties' two weeks uninterrupted vacation access time. A plain reading of that provision evidences that it contemplates that the parties will utilize vacation access after May 15 of each year as any other reading of the provision would render the May 15 notice requirement moot. See, McKinney's Cons. Laws of NY, Book 1, Statutes § 94.
The Court also notes that Petitioner-father's plan to marry and the wedding plans - which arose after the parties had consented to the July 12 Order [FN2] - constitute a substantial change in circumstance which could constitute a basis for modifying the prior visitation order.
Accordingly, the ambiguity in the July 12 Order regarding vacation access prior to May 15 in a calendar year and the substantial change in circumstance - to wit, the Petitioner-father's impending marriage - mandates the Court's consideration of the visitation schedule with respect to the Subject Child's best interests. See, McFarlane v. McFarlane, 148 AD2d 589 (App. Div. 2nd Dept. 1989) (stipulations can be amended because of mistake or ambiguity); see also, Kadin v. Kadin, 131 AD2d 437, 439 (App. Div. 2nd Dept. 1987) (paramount concern is the best interests of the child and any conflicting right of either parent must yield to that superior demand).
As an initial matter, the Court notes that religion is an important element to both of the [*3]parents with respect to the Subject Child's upbringing as evidenced by the terms of the July 12 Order and the parties' credible testimony. Specifically, the July 12 Order requires the Petitioner-father to " . . .insure the child's attendance at church for either Saturday or Sunday mass; . . . ." To that end, Petitioner-father credibly testified that he has taken the Subject Child to church during each time in which he has had access to her on the weekends. Respondent-mother also credibly testified that she takes the child to church every Sunday.
Petitioner-father credibly testified that he believes it is important for his daughter to be at the wedding as it is a "religious ceremony" to be witnessed by family and friends. He credibly testified that he planned for his daughter to be one of two flower girls at the wedding ceremony and that it is scheduled to take place at Sacred Heart, a Catholic church in Yonkers, with the reception scheduled to occur at Glen Island in New Rochelle. Respondent-father credibly testified that he believes it is more important for his daughter to attend his wedding than a beach vacation stating that she could go "to the beach other times but I have only one wedding that she'll be able to be at." Respondent-father also testified that although he agrees his daughter is too young to appreciate the wedding, he believes that it is important that she attend so that as she gets older she can look back knowing that she was part of her father's wedding ceremony.
Although Respondent-mother testified that she had offered to make the Subject Child available to the father during the wedding reception, Petitioner-father credibly testified that he would not want his daughter at the reception - distinguishing it from the actual religious ceremony - because the reception is an "adult party" where there will be "drinking and loud music".
Respondent-mother also testified that the Subject Child, who will be two years old on May 19, 2006, is too young to know "what is going on" at the church and therefore her attendance at the wedding is not as important as the planned vacation out of the country. Respondent-mother also testified that the Subject Child is a "terror" in church.
Although the Court agrees with Respondent-mother that the Subject Child is too young to appreciate the significance of the wedding, the importance of the Subject Child's attendance at this anticipated "once in a lifetime" event for her father is significant. With respect to this specific event, the Court notes that, although a family can take beach vacations year after year, a wedding typically is a "once in a lifetime" event which is attended by family and friends to promote familial bonds. The fact that this wedding also is a religious celebration - when the evidence shows that religion is an important value the parties seek to instill in their daughter - makes it even more important for the child's best interests to attend the event. See, Kadin, at 439 (visitation order modified to accommodate father's religious practices); Manos v. Manos, 282 AD2d 749, 750 (App. Div. 2nd Dept. 2001) (visitation schedule modified so that children could attend Hebrew school).
Participation in family milestones - birthdays, holidays, graduations, weddings, and funerals, as well as family vacations, by members of a family is an important bonding mechanism that helps make individuals part of a family unit. The Court finds that the Subject Child's attendance and participation at her father's wedding - even at such a young age - is an important part of her bonding experience with her father and his family. Moreover, her awareness and knowledge as she grows and matures that she was an integral part of her father's wedding will help maintain the family bond that her father is seeking to forge with her even though she does [*4]not reside primarily with him.
It is exactly this type of bond between the father and his daughter that the Respondent-mother, as the primary custodian of the Subject Child, is obligated to foster. See, Young v. Young, 212 AD2d 114 (App Div. 2nd Dept. 1995); see also, Raybin v. Raybin, 205 AD2d 918 (App. Div. 3rd Dept. 1994). Thus, Respondent-mother's contention that it is more important for the Subject Child to attend a beach vacation in the Dominican Republic with her and her friends and family members than it is to attend the father's wedding is very troubling to the Court. (January 20, 2006 Transcript pp. 45-46.) Indeed, as discussed later herein, the evidence at trial demonstrates that Respondent-mother's view that her relationship with the child and the child's relationship with her family is more important than the relationship between the father and child has negatively impacted the father's relationship with his daughter.
Respondent-mother contends that she made her plans for the May beach vacation in October consistent with the terms of the July 12 Order and that she would be negatively impacted financially and emotionally if the Subject Child could not be part of the trip. Respondent-mother testified that she would "not go out of the country" if her daughter was not with her and that she would have to cancel her vacation if the Subject Child could not go. The Court is not persuaded by such arguments and notes that Respondent-mother could take the Subject Child for part of the trip or could go for the entire time without her. Cancelling the trip in its entirety is not necessary and would be solely the decision of Respondent-mother.
Although Respondent-mother credibly testified that she was required by work protocol to select her vacation dates for 2006 in late October 2005 and was unaware of the conflict when she selected the May dates, the evidence at trial demonstrates that, contrary to information provided to the Court by Respondent-mother and her attorney, Respondent-mother had not incurred any financial liability for this trip until February 2006- after the issue had already been discussed at length in Court on January 30, 2006.
Respondent-mother and her attorney told the Court several different times during the January 30, 2006 proceeding that Respondent-mother already had her tickets for the trip and already had paid for them. (See January 30, 2006 Transcript pp. 9; "Did she already buy tickets?" "Yes, Your Honor."; p. 33: "She has her tickets. She's spent $1700 and she's coming back the following Wednesday." p. 36: "And we already selected our time, we have our tickets and everything else. It doesn't matter." "My client has tickets dated . . . The beginning of November, November 1st, October 31st somewhere in there, before the court appearance, . . . p. 38: "My point is simply this that before the court date . . . my client already got her tickets"; p. 43: "Does your client have an idea as to the cost? "Yeah, I paid for it.")
The credible testimony of DJ, Respondent-mother's brother-in-law, established that although he and Respondent-mother and the other travelers planned the dates for the vacation in late October 2005, but the trip was not booked or paid for until February 6, 2006. Indeed, Mr. J credibly testified that he was responsible for making all the vacation arrangements and that Respondent-mother paid him for her share of the cost of the vacation in two installments - one in February 2006 and one in March 2006.
Thus, contrary to her earlier contentions on January 30, 2006 to the Court, Respondent-mother did not have her tickets nor had she paid for the trip until February of this year. Respondent-mother's testimony at the hearing that she couldn't remember when she paid for the [*5]trip was not credible. Indeed, Respondent-mother incurred such costs in February and March of this year knowing that the issue of the conflict in dates was the subject of a hearing scheduled by the Court for March 30, 2006. She also admitted that she never asked Mr. J about the tickets or payments or rescheduling - even after she was made aware through the Court proceedings of the conflict in the dates.
Thus, any financial losses by the Respondent-mother in connection with the trip are wholly a result of her choices her failure to discuss with Mr. J, the trip planner, any details about reimbursement or rescheduling or adjusting the return date to accommodate the wedding date, and her decision not to proceed with the vacation in its entirety if her daughter cannot attend or has to return earlier than scheduled. The Court does note that Mr. J credibly testified that he obtained "trip insurance" which will protect them from losing their payments for the vacation in the event that they have to cancel the trip due to unforseen circumstances.
More significantly, the Court finds that Respondent-mother's misrepresentations to the Court about the nature and extent of her financial commitment for the vacation when she was made aware of the conflict in dates makes suspect Respondent-mother's contention that she has tried to promote the relationship between the child and her father. Indeed, the evidence at trial shows that Respondent-mother's attempt to prioritize her and her family's relationship with the child has been to the detriment of the father's relationship with the child.
For example, in the November 2005 Court proceeding, parties and counsel were attempting to select "make up" dates for Petitioner-father for scheduled overnight visits he did not receive during late September and October. In addressing the issue of the father's access to the child on Christmas Eve and Christmas Day, the father agreed to have the child at his home from December 22 through 4:00 p.m. on December 24 and the mother would have the child for the remainder of Christmas Eve and Christmas Day based upon the representation that she would be out of town in New Jersey with the child. (See Transcript, November 14, 2005, p. 7; see also Transcript, November 14, 2005, p. 9.)
Notably, in the November 14, 2005 proceeding Respondent-mother's counsel expressly precluded any option of Petitioner-father visiting with his daughter for Christmas Eve night or Christmas Day stating that there was a "problem with Christmas Eve . . .[because] the M's are going as a family to visit relatives in Princeton. They have arranged this pretty much in advance. They leave Christmas Eve and that is why . . . [the child has got] "to be back by 4 or 4:30 at the very latest." However, during this proceeding, Respondent-mother admitted that she did not travel to New Jersey with the subject child on Christmas Eve and that she was in Yonkers on Christmas Eve and Christmas Day with the child. Respondent-mother also admitted that she failed to call or notify Petitioner-father about any changes in her holiday travel plans such that the father could celebrate the holiday with his daughter either Christmas Eve night or Christmas Day. The Respondent-mother's failure to consider and promote the father's relationship with his daughter as a prime parenting objective is of concern to this Court. A custodial parent's duty is to foster a relationship between the child and the non-custodial parent and "may be properly called upon to make certain sacrifices to ensure the right of the child to the benefits of visitation with the noncustodial parent." Daghir v. Daghir, 82 AD2d 191, 194 - 195 (App. Div. 2nd Dept. 1981).
Nonetheless, the issue before this Court is narrow - the extent, if any, of the Petitioner-father's access to his daughter for his wedding celebration. Accordingly, for the reasons set forth [*6]above, the Court will deny the Petitioner-father's request to have visitation with the child for the rehearsal dinner, however, the Court finds that it is in the Subject Child's best interests to attend her father's wedding on May 12, 2006 and herein amends the July 12 Order as follows:
IT IS HEREBY ORDERED that, notwithstanding any other provision in this or the July 12 Order, the Respondent-mother shall make the Subject Child available to the Petitioner-father no later than 12:00 noon on May 12, 2006 through 7:00 p.m. that evening. Petitioner-father shall be responsible for arranging for pick up of the Subject Child to commence the visit and Respondent-mother shall be responsible for arranging pick up of the Subject Child at the end of the visit; and it is further
ORDERED that, effective May 5, 2006, the Petitioner-father shall have alternate overnight weekend visitation with the Subject Child, commencing 4:30 p.m. on Friday through Sunday at 6:30 p.m.; and it is further
ORDERED that, in connection with the parties' two weeks of non-consecutive vacation time, each party must notify the other no later than January 30 of the calendar year in which the vacation is to occur or, if there is a reason as to why the party cannot notify the other of the vacation date by January 30 that party must so inform the other party by that date, and, in any event, no later than 90 days prior to commencement of the vacation (if the dates are unknown by January 30 or the vacation is to occur before January 30 of that calendar year); and it is further
ORDERED that the parties participate in the New York State Parent Education and Awareness Program as described in the pamphlets provided to the parties by the Court with this Decision and Order; and it is further
ORDERED that all the terms of the July 12 Order shall remain in full force and effect except to the extent that they conflict with the foregoing terms.
This constitutes the Decision and Order of this Court.

Dated: Yonkers, New York
 April 5, 2006____________________________________
Hon. Colleen D. Duffy, J.F.C.
Distribution:

Footnotes

Footnote 1:Petitioner-father initially sought to have modified the provision in the July 12 Order requiring him to insure that L.M. (his now fiancee) not be alone with the Subject Child. He thereafter withdrew that request for relief and is seeking to have access to the Subject Child for his wedding on that portion of his petition that seeks such "further and other relief" as the Court may deem appropriate.

Footnote 2:Petitioner-father credibly testified that his marriage plans for the date of May 12, 2006 were formed on or about early July 2005. Although the July 12 Order was entered on July 12, the Order was effective upon the parties' consent at the April 27, 2005 Court proceeding. Accordingly, the wedding plans occurred after the Order was agreed to even though it was entered in July.