Matter of J.C. v A.T. (2007 NY Slip Op 51655(U))

[*1]

Matter of J.C. v A.T.

2007 NY Slip Op 51655(U) [16 Misc 3d 1131(A)]

Decided on August 23, 2007

Family Court, Nassau County

Singer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 23, 2007

Family Court, Nassau County
In the Matter of a Proceeding Under Article 6 of the Family Court Act J.C., Petitioner,
against
A.T., Respondent.
V-0000-00

Conrad D. Singer, J.
On July 11, 2006, J.C., (hereinafter petitioner), filed a petition pursuant
to Section 6 of the Family Court Act seeking an Order of Custody for the child G.R.T.C., (d/o/b
March 28, 2005), against A.T., (hereinafter respondent). The parties were never married, and there
is an Acknowledgment of Paternity.
On December 11, 2006, a Temporary Order of Custody and Visitation was issued by Judge Merik R. Aaron, granting the petitioner-mother custody of the subject child and the respondent-father visitation. Father was to have alternating Saturdays commencing December 30, 2006 from 9:00 a.m. until 5:00 p.m.; Sundays from 9:00 a.m. until 6:00 p.m.; plus one weekday evening as the parties would agree, but not more than twice per week; alternating holidays with day visitation only; holiday visitation taking precedence over Saturday and Sunday visitation. On Saturdays and Sundays, mother or a member of her family, was to drop off the child at the respondent's residence, with the father picking the child up from mother's residence for all other visitation. Respondent was to return the child after all visitation periods.
An Investigation and Report was also ordered by the Court on December 11, 2006. That report was received by the Court on February 20, 2007.
The parties appeared before the Court for conference on February 20, 2007 and March 29, [*2]2007. There being no resolution, the matter was scheduled for hearing April 25, 2007. Petitioner was represented by William Harrison, Esq. Adrienne Flipse-Hausch, Esq. was appointed law guardian for the child. Respondent chose to appear pro-se.
The hearing commenced on April 25, 2007 and was completed on July 10, 2007. On April 25, 2007, the petitioner was the first witness. She testified that she is gainfully employed as an office manager for P.C. Richards. The subject child lives with her and her parents, her parents providing child care when necessary. She stated the reason she filed for sole custody was that she and respondent could not agree on custody and visitation-related issues and could not communicate effectively. She further testified that respondent was inconsistent with visitation, including failing to show up for a scheduled visit, being late, or canceling on very short notice. As an example she offered that despite there being a temporary order granting the respondent alternate Saturday visitation, over a six month period respondent only exercised that visitation six times. There was also testimony regarding an incident where respondent refused to visit with his child when the child was ill for fear of the father becoming ill himself. The petitioner also recounted an incident where she arrived at the respondent's home a few minutes early for a visit and the respondent became upset, did not come out of his house and instead made petitioner and child wait for him in the car until he was ready to commence the visitation. Petitioner testified that on an occasion when respondent requested a weekday visitation and petitioner agreed to it, respondent did not show up nor call to cancel the visitation. The Court found the petitioner to be credible, truthful and to be genuinely concerned for the child's best interests.
The respondent-father testified that he did indeed refuse to have visitation with the child when she had a virus for fear of catching the virus. Father also testified that on one occasion he did not answer the door when the mother was early, and stated that he was critical of petitioner when she was five minutes late in bringing the child to him. Respondent testified he wanted the child's name changed so that his last name would be the child's last name (currently it is hyphenated with the child's last name being a combination of both parents' names with the father's surname first, and the mother's surname name second) but could not give any rational explanation for it, other than him wanting it that way. The father repeatedly assured the Court he was a hard working man, that he loved and deeply cared for his daughter and wanted what was best for her. The respondent stated he currently lives with another woman. He was evasive on the nature of that relationship, but stated that he owns a home with her, but wishes to get her off the deed. Respondent denied that he purposely made the petitioner and child wait on one occasion when she was early for visitation and claimed he was in the bathroom and that the delay was "unavoidable". Except for this instance, respondent's testimony did not contradict petitioner's testimony significantly. The Court found respondent's testimony troubling at times and lacking in credibility. The Court does not doubt he loves his daughter and cares for her deeply, but the Court does doubt whether respondent is able to make his own needs, as well as his problems with petitioner, secondary to the best interests of his daughter.
It is well settled law that an award of custody must be based upon what is in the child's best interest from a totality of the circumstances. There is no one factor, in most cases, which is determinative in making such an award. Eschbach v Eschbach, 56 NY2d 167 (1982). Also to be considered is the ability of each parent to provide for the child's emotional and intellectual development. Keating v Keating, 147 AD2d 675 (2d Dept. 1989); appeal dismd, 74 NY2d 791 [*3](1989). In this case, the petitioner seeks sole custody while the respondent requests the court direct joint custody of the child.
Taking into consideration the testimony in this case, joint custody is not an option. Joint custody is only appropriate where the parties can communicate with one another and settle disagreements without court intervention. Laura A.K. v. Timothy M., 204 AD2d 325 (2d Dept. 1994), cf Guarnier v. Guarnier, 155 AD2d 744 (3d Dept. 1989). The fact these parties are before the Court indicates an inability for them resolve problems on their own. However, the testimony itself further spells out the parties inability to communicate effectively. The Court only needs to focus on the problems that arose with drop off of the child for visitation. Regardless of whose position the Court believes, and it tends to believe the petitioner's, these parties cannot effectuate the drop off of the child for visitation without it resulting in an argument and it becoming fodder for a custody application. If this simplest of acts cannot occur without incident, then the Court has no confidence that these parties could reach consensus on more serious issues, such as medical or educational decisions.
With it being clear joint custody cannot occur, the Court must decide which parent shall have sole custody. The Court believes the petitioner is better suited to be the sole custodian. The petitioner seems able and likely to put the child's welfare before her own needs, even when it comes to the child having a relationship with the father. During the pendency of the temporary order of custody and visitation, the petitioner adhered to it even while respondent would not. She allowed visitation on days outside the agreement, even though respondent would argue with her over petty issues such as petitioner arriving a few minutes early or late for a visit. "One of the primary responsibilities of a custodial parent is to assure meaningful contact between the [child] and the other parent". Raybin v. Raybin, 205 AD2d 918, 921 (3d Dept. 1994) citing Bliss v. Ach, 56 NY2d 995, Gorelik v. Gorelik, 303 AD2d 553, 2003 NY Slip Op. 12050 (2d Dept 2003). The petitioner is willing to do so. The Court is not convinced the respondent is capable of doing so. This is based upon the evidence before the Court, including the incident where the respondent refused visitation because his daughter was ill. It is fair to assume that the child, like all other children, will encounter her fair share of colds and illnesses in her life. The respondent has left this Court believing he would refuse to see his child each time she is ill, and the Court wonders what he would do if the child becomes ill while in his custody. The Court has also considered the respondent's inflexibility and his evasiveness during the trial.
Taking everything into consideration, the Court finds by a fair preponderance of the evidence that the petitioner shall have sole custody of the subject child. The petitioner "would offer the daughter the best opportunity to separate, individuate, and to grow into her own person, without interfering in a positive relationship with the [respondent], even though both parties [are] responsible and loving parents". Palumbo v. Palumbo, 292 AD2d 358, 2002 NY Slip Op. 01770 (2d Dept. 2002) citing Barbato v. Barbato, 264 AD2d 792 (2d Dept. 1999). While respondent should be afforded regular and liberal parenting time with the child, and should be consulted on all major issues regarding the child's health, education and welfare, the petitioner is best suited to be the physical custodian and final decision-maker. Further, the Court agrees with the Probation Department's Report which recommends that the current Temporary Order of Custody and Visitation, granting petitioner sole custody and respondent visitation, be made final.
Accordingly, parenting time for the father shall be as follows: from the date of this order until [*4]April 1, 2008, after the child reaches her third (3 years of age) birthday, respondent will have parenting time every other Saturday, and the first three (3) Sundays each month, with the mother to have the fourth Sunday and during the months that have five (5) Sundays, the mother will also have the fifth (5th) Sunday. However, the father must confirm to the mother on the Wednesday before his parenting time that he will exercise said parenting time. His failure to confirm will result in him forfeiting that parenting time without a makeup. Should the father confirm but then fail to exercise the parenting time without proper notice and an exigent circumstance, he is deemed to have forfeited the next scheduled parenting time as well. The parties shall share transportation duties for parenting time purposes, with the father being responsible for transportation for Saturday parenting time and the mother being responsible for transportation for Sunday parenting time.
The parties will alternate all legal holidays, but the father shall have Easter and Thanksgiving Day in odd years and Christmas Day and New Year's Day in even years. The parties shall split the week between Christmas and New Year, with the father having the child on December 26, 27 and 28 in even years, returning the child to the mother at 9am on the 29th. In odd years, he will have the child with him on December 29, 30 and 31st, returning the child to the mother on January 1st at 9am. Further, the respondent will have parenting time with the child on the father's birthday, if the child does not have school, and if the child is in school on the father's birthday, the father will have three (3) hours with the child; respondent shall have the child on father's day, and parenting time on the child's birthday for three (3) hours. Until the child reaches the age of five (5) the respondent will have one week parenting time during the summer, thereafter the respondent will have two (2) weeks in the summer. The father will inform the mother, in writing, no later than May 1st of each year what week or weeks he intends to exercise summer vacation with the child. Failure to do so will make his weeks subject to the mother's schedule. The petitioner will sign all necessary papers so that father can have access to the child's medical and school records. Petitioner shall consult with the respondent regarding all major decisions of the child. These include, but are not limited to medical, educational and personal welfare decisions. This consultation should occur before a final decision is made in non emergency situations. Petitioner should consider and value respondent's input. After doing so, petitioner shall make such decisions as she deems appropriate and in the child's best interests.
There shall be any other parenting time as is agreed upon by the parties.
Therefore, based on the foregoing, it is
ORDERED that petitioner, J.C. shall have sole legal custody of the child, G.R.T.C., (d/o/b 3/28/05).
This constitutes the Decision and Order of the Court after hearing.
ENTER
________________________________
HON. CONRAD D. SINGER
Judge of the Family Court
Dated: August 23, 2007
Check applicable box:
Order mailed on [specify date(s) and to whom mailed]:________________________________
[*5]
Order received in court on [specify date(s) and to whom given]:_________________________
PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF THE COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.